IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMANDA OLICIA | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-01184 |
| | § | |
| THE METHODIST HOSPITAL D/B/A | § | |
| THE METHODIST HOSPITAL | § | |
| SYSTEM, HOUSTON METHODIST | § | |
| THE WOODLANDS HOSPITAL, | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

## TABLE OF CONTENTS

I.     Summary of Argument ...................................................................................... 1

II.    Nature and Stage of Proceeding ..................................................................... 2

III.   Issues To Be Ruled Upon and Standard of Review ........................................ 3

IV.   Background ...................................................................................................... 4

    A.  Plaintiff's Employment With Houston Methodist Willowbrook Hospital And Houston Methodist The Woodlands ...................................................... 4

    B.  Houston Methodist The Woodlands's Investigation And Plaintiffs' Termination ...... 5

    C.  The TWC Denies Plaintiff Unemployment Benefits ................................. 6

    D.  Plaintiff's Lawsuit And EEOC Charge ..................................................... 7

V.    Arguments & Authorities ................................................................................ 8

    A.  Plaintiff's Claims Under Texas Health & Safety Code § 161.134 Fail As A Matter Of Law    8

        1.  Plaintiff Cannot Establish The Elements Of A Claim Under Texas Health & Safety Code § 161.134 ............................................................ 8

        2.  Plaintiff Was Terminated For Legitimate, Non-Retaliatory Reasons ..................... 11

        3.  Plaintiff Cannot Demonstrate A Fact Issue That She Would Not Have Been Terminated "But For" Any Alleged Report ................................. 12

    B.  Plaintiff's FMLA Interference Claim Fails As A Matter Of Law ................... 13

        1.  Plaintiff Cannot Establish A *Prima Facie* FMLA Interference Claim ...................... 13

        2.  Houston Methodist The Woodlands's Legitimate, Non-Retaliatory Reasons For Denying Plaintiff FMLA Leave ...................................... 14

        3.  Plaintiff Has No Evidence Houston Methodist The Woodlands's Reasons For Termination Were Pretextual ........................................ 14

    C.  Plaintiff's Sex Discrimination Claim Fails As A Matter Of Law ................... 15

        1.  Plaintiff Cannot Establish A *Prima Facie* Sex Discrimination Claim ...................... 16

        2.  Houston Methodist The Woodlands's Legitimate, Non-Discriminatory Reasons for Termination .......................................... 17

        3.  Plaintiff Cannot Show That The Reasons For Termination Were Pretext For Unlawful Discrimination ................................................ 18

            i.  Houston Methodist The Woodlands's Reasons For Terminating Plaintiff Were Accurate And In Good Faith ................................. 18

            ii.  Defendants Are Entitled To The Same Actor Inference ................... 20

D.  Plaintiff's Hostile Work Environment Claim Fails As Matter Of Law .......................... 20

E.  Plaintiff's Retaliation Under Title VII and The Texas Labor Code Claim Fails As A Matter Of Law ........................................................................................................ 23

    1.  Plaintiff Cannot Establish A *Prima Facie* Retaliation Claim ...................................... 23

        i.  Plaintiff Did Not Participate In An Activity Protected By Title VII Or The Texas Labor Code .............................................................................................. 23

        ii.  There Is No Causal Connection Between Any Protected Activity And An Adverse Employment Action ................................................................................. 25

    2.  Houston Methodist The Woodlands's Legitimate, Non-Retaliatory Reasons For Termination ............................................................................................................ 26

    3.  Plaintiff Has No Evidence Of "But-For" Causation ................................................. 26

F.  Plaintiff's Claims Against Houston Methodist Fail Because Houston Methodist Was Not Plaintiff's "Employer" .......................................................................................... 27

G.  Plaintiff's Claims Against Houston Methodist Under Title VII And The Texas Labor Code Fail Because Plaintiff Failed To File A Charge Of Discrimination Naming Houston Methodist As A Respondent ............................................................................ 29

VI.  Conclusion ...................................................................................................................... 30

## TABLE OF AUTHORITIES

### CASES

*Almeida v. Bio-Med. Applications of Tex., Inc.*, 2017 WL 3841928 (W.D. Tex. Aug. 31, 2017) ................ 12

*Alubaidy v. Flexsteel Pipeline Techs., Inc.*, H-19-4398, 2021 WL 2366091 ...................................... 25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 3

*Bardwell v. Global Santa Fe Drilling Co.*, 2007 WL 2446801 (S.D. Tex. Aug. 23, 2007) ........................... 18

*Black v. Pan Am. Labs., LLC*, 2009 WL 10669148 (W.D. Tex. May 13, 2009) ...................................... 18

*Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir.1996) ................................................................. 20

*Brown v. United Parcel Serv., Inc.*, 406 Fed. Appx. 837 (5th Cir. 2010) ................................... 23, 24

*Bryant v. Compass Group USA, Inc.*, 413 F.3d 471 (5th Cir. 2005) .............................................. 20

*Bryant v. W. Elec. Co., Inc.*, 572 F.2d 1087 (5th Cir. 1978) .................................................. 29, 30

*Byers v. Dallas Morning News, Inc.*, 209 F.3d 419 (5th Cir. 2000) ........................................ 15, 16

*Caldwell v. KHOU-TV*, 850 F.3d 237 (5th Cir. 2017) ......................................................... 13, 14

*Carr v. Farmers Services, LLC*, 2010 WL 11444156 (W.D. Tex. Mar. 17, 2010) ................................. 17

*Carrero v. New York City Housing Auth.*, 890 F.2d 569 (2d Cir. 1989) ........................................ 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................................... 3

*Chamblee v. Mississippi Farm Bureau Fed'n*, 551 F. App'x 757 (5th Cir. 2014) ................................ 18

*City of Fort Worth v. Zimlich*, 29 S.W.3d 62 (Tex. 2000) .......................................................... 12

*Crutcher v. Dallas Indep. Sch. Dist.*, 410 S.W.3d 487 (Tex. App.—Dallas 2013, no pet.) ..................... 23

*Davis v. Dall. Area Rapid Transit*, 383 F.3d 309 (5th Cir. 2004) ............................................... 15

*Davis v. Dallas Indep. Sch. Dist.*, 448 Fed. Appx. 485 (5th Cir. 2011) ........................................ 25

*EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235 (5th Cir. 2016) ..................................................... 23

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) .............................................................. 21

*Faulkner v. Dep't of State Health Servs.*, 2009 WL 722983 (N.D. Tex. Mar. 19, 2009) ......................... 11

*Forsyth v. Barr*, 19 F.3d 1527 (5th Cir. 1994) ....................................................................... 3

*Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236 (5th Cir. 2019) .............................................. 23

*Garza v. Ranier L.L.C.*, 2013 WL 3967786 (W.D. Tex. July 31, 2013) .......................................... 20

*Harris County Hosp. Dist. v. Parker*, 484 S.W.3d 182
   (Tex. App.—Houston [14th Dist.] 2015, no pet.) ............................................................... 21

iv

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) .................................................................... 21

*Harris–Childs v. Medco Health Solutions, Inc.*, 169 Fed.Appx. 913 (5th Cir.2006) ............ 25

*Janaki v. C.H. Wilkinson Physician Network*, 624 S.W.3d 623
    (Tex. App.—Corpus Christi 2021, no pet.) ......................................................................... 28

*Jeffrey v. Dallas County Med. Examiner*, 37 F. Supp. 2d 525 (N.D. Tex. 1999) ................... 22

*Keller v. Coastal Bend Coll.*, 629 F. App'x 596 (5th Cir. 2015) ......................................... 15

*King v. Enter. Leasing Co. of DFW*, 2007 WL 2005541 (N.D. Tex. July 11, 2007) ............... 22

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009) ................................................... 16

*LeMarie v. La. Dep't of Transp. & Dev.*, 480 F.3d 383 (5th Cir. 2007) ............................... 19

*Little v. Liquid Air Corp.*, 37 F. 3d 1069 (5th Cir. 1994) ....................................................... 3

*Little v. Tex. Dept. of Criminal Justice*, 177 S.W.3d 624
    (Tex. App.—Houston [1st Dist.] 2005, no pet.) .............................................................. 17

*Long v. Eastfield Coll.*, 88 F.3d 300 (5th Cir. 1996) ........................................................... 21

*Matthews v. City of Houston Fire Dep't*, 609 F. Supp. 2d 631 (S.D. Tex. 2009) .................. 23

*Matushita Elc. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................................. 3

*Mauder v. Metro. Transit Auth. of Harris County, Tex.*, 446 F.3d 574 (5th Cir. 2006) ......... 14

*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086 (5th Cir. 1995) ........................................... 20

*McClain v. Lufkin Indus., Inc.*, 519 F.3d 264 (5th Cir. 2008) ............................................... 29

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .................................................... 15

*Moini v. Univ. of Texas at Austin*, 832 F. Supp. 2d 1160 (5th Cir. 1993) ................... 14, 15, 18

*Musser v. Paul Quinn Coll.*, 944 F.3d 557 (5th Cir. 2019) ................................................... 26

*NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142 (Tex. 1999) ................................................. 27

*Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006) ............................................................... 29

*Proud v. Stone*, 945 F.2d 796 (4th Cir. 1991) .................................................................... 20

*Ramsey v. Henderson*, 286 F.3d 264 (5th Cir. 2002) ........................................................... 21

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ................................... 17

*Reine v. Honeywell Intern. Inc.*, 362 Fed. Appx. 395 (5th Cir. 2010) ................................. 21

*Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327 (5th Cir. 2005) ............................... 14

*Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871 (5th Cir.1999) ........................... 21

*Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973) ........................................... 27

*Simmons-Myers v. Caesars Entm't Corp.*, 515 Fed. Appx. 269 (5th Cir. 2013) ............................................. 29

*Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321 (5th Cir. 2009) ............................................. 21

*Tatum v. S. Co. Services, Inc.,* 930 F.3d 709 (5th Cir. 2019) ............................................. 14

*Tex. Dep't of Human Servs. of the State of Tex. v. Hinds*, 904 S.W.2d 629 (Tex. 1995) ............... 12

*Tex. Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842
    (Tex. App.—Austin 2007, pet. denied) ............................................. 9, 11

*Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir. 1992) ............................................. 3

*Tratree v. BP N. Am. Pipelines*, Inc., 277 Fed.Appx. 390 (5th Cir.2008) ............................ 25

*Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887 (5th Cir. 2012). ............................................. 16

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ............................................. 23

*Wichita Cnty. v. Hart*, 917 S.W.2d 779 (Tex. 1996) ............................................. 9

*Willis v. Roche Biomedical Labs.*, 61 F.3d 313 (5th Cir. 1995) ............................................. 3

*Word v. Wilson N. Jones Reg'l Health Sys.*, 2007 WL 2421500
    (Tex. App.—Dallas Aug. 28, 2007, no pet.) ............................................. 8

## STATUTES

28 U.S.C. § 1367 ............................................. 2

28 U.S.C. § 1441 ............................................. 2

29 U.S.C. § 2611 ............................................. 30

29 U.S.C. § 2613 ............................................. 13, 14

42 U.S.C. § 2000 ............................................. 24

Tex. Gov't Code § 554.002 ............................................. 12

TEX. HEALTH & SAFETY CODE § 161.134 ............................................. passim

TEX. LAB. CODE Chapter 21 ............................................. 24, 30

## RULES

FED. R. CIV. P. 36 ............................................. 7

Fed. R. Civ. P. 56 ............................................. 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMANDA OLICIA | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-01184 |
| | § | |
| THE METHODIST HOSPITAL D/B/A | § | |
| THE METHODIST HOSPITAL | § | |
| SYSTEM, HOUSTON METHODIST | § | |
| THE WOODLANDS HOSPITAL, | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Defendants submit this Motion for Summary Judgment and in support thereof respectfully show as follows:

### I.    SUMMARY OF ARGUMENT

Defendants' Motion for Summary Judgment should be granted because—

- **Plaintiff was never employed by Houston Methodist;**

- **Plaintiff failed to exhaust administrative remedies with respect to Houston Methodist for her claims under Title VII and the Texas Labor Code;**

- **Plaintiff did not report any violation of law in good faith to a supervisor or administrator, which is required to establish any claim under Texas Health and Safety Code § 161.134;**

- **Defendants did not deny Plaintiff benefits to which she was entitled to under the FMLA, which is required to establish a *prima facie* case of FMLA interference;**

- **There is no evidence Plaintiff was treated less favorably than any similarly situated person not in her protected class, which is a required *prima facie* element of her sex discrimination claim;**

1

- **There is no evidence Plaintiff was subjected to unwelcome harassment based on her sex which affected a term or condition of her employment, which is required to establish a _prima facie_ hostile work environment claim;**

- **Plaintiff did not participate in a protected activity which is a required _prima facie_ element of her retaliation claim under Title VII and the Texas Labor Code;**

- **No causal connection exists between any protected activity and Plaintiff's termination which is a required _prima facie_ element of her retaliation claim;**

- **Houston Methodist The Woodlands terminated Plaintiff's employment for a legitimate, non-discriminatory and non-retaliatory reason; and**

- **Plaintiff cannot show that Houston Methodist The Woodlands's reasons for termination were pretext for unlawful discrimination or retaliation.**

## II.  Nature and Stage of Proceeding

This is an employment case stemming from the termination of Plaintiff's employment at Houston Methodist The Woodlands.  Plaintiff filed her Original Petition in Texas state court against only Houston Methodist—who was never her employer.  Houston Methodist removed the action to federal court pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1367(a).[1]  After filing a Charge of Discrimination against only Houston Methodist The Woodlands, Plaintiff filed her Amended Original Complaint against both Houston Methodist and Houston Methodist The Woodlands, asserting claims under  Texas Health and Safety Code § 161.134, FMLA interference; and sex discrimination, retaliation, and hostile work environment in violation of Title VII and the Texas Labor Code.[2]  Houston Methodist filed its Amended Original Answer, again denying it violated any laws that would support Plaintiff's claims for relief.[3]  Houston Methodist The Woodlands filed its Original Answer, similarly denying it violated any laws that would support Plaintiff's claims

---

[1]  _See_ Dkt. 1.

[2]  _See_ Dkt. 15.

[3]  _See_ Dkt. 17.

for relief.[4]  Defendants now move for summary judgment because all of Plaintiff's claims fail as a matter of law.

### III.   ISSUES TO BE RULED UPON AND STANDARD OF REVIEW

Defendants move for summary judgment on all of Plaintiff's claims.  Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  The movant is entitled to summary judgment if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."[6]  "[T]he mere existence of *some* factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be *genuine* and *material*."[7]  Only "disputes over facts that might affect the outcome of the suit under the governing law" are material.[8]  A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]  Conclusory allegations and unsubstantiated assertions do not satisfy the non-movant's summary judgment burden.[10]  The non-movant must "identify specific evidence in the record," and "articulate the precise manner in which that evidence support[s] [its] claim[s]."[11]

---

[4]  *See* Dkt. 18.

[5]  Fed. R. Civ. P. 56 (a).

[6]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* FED. R. CIV. P. 56(c)(1)(B) cmt. (2010).

[7]  *Willis v. Roche Biomedical Labs.*, 61 F.3d 313, 315 (5th Cir. 1995. )

[8]  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[9]  *Id.*

[10]  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (nothing that non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (quoting *Matushita Elc. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment.").

[11]  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

## IV.   BACKGROUND

### A.   Plaintiff's Employment With Houston Methodist Willowbrook Hospital And Houston Methodist The Woodlands

In April 2016, Plaintiff obtained employment at Houston Methodist Willowbrook Hospital as an MRI Technologist.[12]  As an employee of Houston Methodist Willowbrook Hospital, Plaintiff acknowledged her understanding that it was her duty to read and comply with all employee policies.[13]   Plaintiff also acknowledged her understanding that a violation of any employee policy could subject her to termination.[14] Plaintiff further acknowledged her "personal duty to bring all real or suspected violations of the law, and Methodist's values and organizational ethics to the attention of my supervisor, Human Resources, Entity Business Practices Officer, and/or the Business Practices Officer or to call the Business Practices EthicsLine."[15]   Prior to commencing employment, Plaintiff also signed a Confidentiality and Information Security Agreement, acknowledging her ethical and legal responsibility to protect the privacy of all patients and employees and to safeguard the confidentiality of their health and other sensitive information.[16]

In February 2019, Plaintiff applied for and obtained subsequent employment at Houston Methodist The Woodlands as an MRI Technologist II.[17]   Importantly, Plaintiff was hired at Houston Methodist The Woodlands by the primary alleged discriminator and bad-actor—James Indiero.[18]  Unfortunately, during her

---

[12]   *See* Exhibit "C," April 11, 2016, Offer of Employment; *see also* Declaration of J. Indiero, attached as Exhibit "B," attaching Exhibit "C," Offer of Employment, at HMH 203; Exhibit "D," Employee Handbook Acknowledgement, at HMH 238; Exhibit "E," Confidentiality & Information Security Agreement, at HMH 237; Exhibit "F," February 20, 2019 Offer of Employment, at HMH 249; Exhibit "G," July 11, 2019 Communication Record, at HMH 770; Exhibit "H," August 26, 2020, Documentation of Termination, at HMH 288-89; Exhibit "I," August 24, 2020 Investigative Summary, at HMH 4-5; Exhibit "J," Disciplinary Guidelines for Confidentiality Information Violations, at HMH 113-14; Exhibit "K," Appeal Status & Notice of Telephone Hearing, at HMH 70-80; Exhibit "L," January 7, 2021 Benefits Determination, at HMH 98-101; Exhibit "M," July 29, 2020, Cigna Correspondence, at HMH 759–60; Exhibit "N," August 22, 2020 Cigna Correspondence, at HMH 751.

[13]   *See* Exhibit "D."

[14]   *See* Plaintiff's Deposition Transcript, attached as Exhibit "O" at 26:11–18.

[15]   *See* Exhibit "D."

[16]   *See* Exhibit "E."

[17]   *See* Exhibit "F."

[18]   *See* Exhibit "F."

employment at Houston Methodist The Woodlands, Plaintiff displayed a negative and confrontational attitude which made her coworkers uncomfortable and upset.[19]

**B.      Houston Methodist The Woodlands's Investigation And Plaintiffs' Termination**

On August 14, 2020, Plaintiff was observed taking a picture on her personal cell phone of an MRI Safety Screening Form that undisputedly contained confidential Protected Health Information ("PHI").[20] When asked by her leadership why she took the picture, she stated she needed it for reference.[21]  Plaintiff also originally stated the picture did not contain PHI and that she only sent it from her "personal cell phone via her Houston Methodist email account to her Houston Methodist email account."[22]  However, after review and upon initial investigation, the picture was found to contain confidential PHI which was actually and undisputedly sent from Plaintiff's unsecure Yahoo e-mail account to her Houston Methodist e-mail account which requires disclosure to the patient that their PHI was compromised.[23]

Houston Methodist The Woodlands immediately began a formal investigation into Plaintiff's actions. The investigation confirmed that the "act of photographing or making a copy of the PHI in any manner, and sending it outside the Houston Methodist organization is an act of releasing PHI."[24]  During the investigation, Plaintiff was also unable to provide an explanation for why she took the picture containing confidential PHI and sent it through her unsecure Yahoo e-mail account and "had no plans to delete the image from her phone."[25]

**The investigation concluded that Plaintiff's actions constituted a "blatant disregard for this patient's privacy and security of PHI, which is categorized as a Level 3 offense" of Houston**

---

[19]  *See* Exhibit "G."

[20]  *See* Exhibit "H"; *see also* Exhibit "O" at 132:5–9.

[21]  *See* Exhibit "H."

[22]  *See* Exhibit "H."

[23]  *See* Exhibit "H"; *see also* Exhibit "O" at 133:8–13.

[24]  *See* Exhibit "I."

[25]  *See* Exhibit "I."

**Methodist's HR12 Confidentiality and Information Security Agreement Policy**.[26]   At Houston Methodist The Woodlands, a Level 3 offense warrants immediate termination.[27]   Accordingly, on August 26, 2020, Plaintiff was terminated as a result of her clear and blatant violations of several of Defendants' policies, including Defendants' ICARE values.[28]   Five months after Plaintiff's termination, on or around January 25, 2021, Plaintiff obtained new employment at The University of Texas MD Anderson Cancer Center as an MRI Technologist.[29]

## C.    The TWC Denies Plaintiff Unemployment Benefits

Plaintiff applied for unemployment benefits on August 23, 2020.  The Texas Workforce Commission ("TWC") subsequently denied Plaintiff unemployment benefits.[30]   Plaintiff filed an appeal of the TWC's original determination.[31]   On December 30, 2020, a hearing was conducted to determine whether Plaintiff was terminated "based on work-connected misconduct or a voluntary quit[.]"[32]   On January 7, 2021, after the hearing, the TWC issued a written decision ultimately denying Plaintiff's claim for unemployment benefits.[33]   In pertinent part, the TWC found that Plaintiff told an untruth during the investigation into her actions, and violated HIPAA.[34]   The TWC concluded Plaintiff's actions "constituted misconducted connected with" work.[35]

---

[26] *See* Exhibit "I" (emphasis added).

[27] *See* Exhibit "J."

[28] *See* Exhibit "H."

[29] *See* Exhibit "O" at 18:25–20:11.

[30] *See* Exhibit "K."

[31] *See* Exhibit "K."

[32] *See* Exhibit "K."

[33] *See* Exhibit "L."

[34] *See* Exhibit "L."

[35] *See* Exhibit "L."

### D.     Plaintiff's Lawsuit And EEOC Charge

Plaintiff subsequently filed this lawsuit on February 22, 2021.  Houston Methodist removed the original action to federal court.[36]  Plaintiff next filed a Charge of Discrimination against only Houston Methodist The Woodlands alleging sex discrimination and retaliation.[37]  Plaintiff then filed her Amended Original Complaint against both Houston Methodist and Houston Methodist The Woodlands.[38]   On September 2, 2021, Houston Methodist The Woodlands served Plaintiff with its First Set of Interrogatories, Requests for Production, and Requests for Admission.  Plaintiff responded to Houston Methodist The Woodlands's First Set of Interrogatories and Requests for Production on August 12, 2021.  Plaintiff did not respond to Houston Methodist The Woodlands's Requests for Admission.  Federal Rule of Civil Procedure 36(a)(3) provides that a matter is admitted unless "within 30 days after being served, the party to whom the request is directed served on the requesting party a written answer or objection[.]"[39]  As a result, Plaintiff has admitted, in part, the following facts:[40]

- Plaintiff was never employed by Houston Methodist Hospital;

- The Documentation of Termination provided that Plaintiff was terminated for conduct and for violating multiple policies;

- Cigna denied Plaintiff's request for FMLA benefits because "Certification Not Returned";

- Plaintiff never reported or complained of discrimination on the basis of her sex or gender prior to her termination; and

---

[36]  *See* Dkt. 1.

[37]  *See* Exhibit "A."

[38]  *See* Dkt. 15.

[39]  FED. R. CIV. P. 36(a)(3).

[40]  *See* Houston Methodist The Woodlands' Requests for Admission, attached as Exhibit "P."

## V.   ARGUMENTS & AUTHORITIES

**A.   Plaintiff's Claims Under Texas Health & Safety Code § 161.134 Fail As A Matter Of Law**

Plaintiff alleges that Defendants discriminated and retaliated against her in violation of Texas Health and Safety Code § 161.134.[41]   Texas Health and Safety Code § 161.134 provides, in pertinent part, that "a hospital … may not suspend or terminate the employment of or discipline or otherwise discriminate against … **an employee for reporting to the employee's supervisor, [or] an administrator of the facility … *a violation of law*[.]**"[42]   Texas Health & Safety Code § 161.134(f) sets out the applicable burden of proof under Texas Health & Safety Code § 161.134 as follows:[43]

> "A plaintiff suing under this section has the burden of proof, except that it is a rebuttable presumption that the plaintiff's employment was…terminated…for making a report related to a violation if the…termination…occurs before the 60th day after the date on which the plaintiff made a report in good faith."[44]

It is unclear from Plaintiff's testimony whether she is entitled to the rebuttable presumption under Texas Health & Safety Code § 161.134 because in most instances Plaintiff was unable to articulate when she made her alleged report.   Notwithstanding this fact, Plaintiff cannot establish the requisite elements to entitle her to relief under the statute.

### 1.   Plaintiff Cannot Establish The Elements Of A Claim Under Texas Health & Safety Code § 161.134

"The elements of a cause of action under section 161.134 are (1) an employee of a hospital, mental health, facility, or treatment facility, (2) reported a violation of law, (3) to a supervisor, administrator, state regulatory agency, or a law enforcement agency, (4) in good faith, and (5) as a result, the employee was suspended, terminated, disciplined or otherwise discriminated against."[45]   "'Good faith' means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was

---

[41] Dkt. 15, ¶¶ 38–44.

[42] TEX. HEALTH & SAFETY CODE § 161.134 (emphasis added).

[43] *Word v. Wilson N. Jones Reg'l Health Sys.*, 2007 WL 2421500, at *3 (Tex. App.—Dallas Aug. 28, 2007, no pet.).

[44] TEX. HEALTH & SAFETY CODE § 161.134 (f).

[45] *Word*, 2007 WL 2421500, at *3.

reasonable in light of the employee's training and experience."[46]  Here, Plaintiff cannot establish the requisite elements necessary to establish a claim under Texas Health & Safety Code § 161.134 because Plaintiff did not report any actual or suspected violation of law in good faith to a supervisor or administrator of either Houston Methodist or Houston Methodist The Woodlands.  During her deposition, Plaintiff testified that she was wrongfully terminated in retaliation for reporting seven (7) safety violations—not laws—at Houston Methodist The Woodlands.[47]

First, Plaintiff testified that around February 2019 she reported to her Director, James Indiero, that the MRI Lead Technologist, Jeff Noormohammed, misrepresented to Plaintiff that a patient with a spinal cord stimulator was safe to scan.[48]  Importantly, Mr. Indiero denies Plaintiff ever reported a violation of law or safety directly to him.[49]  With respect to this report of an alleged safety violation by Mr. Noormohammed, Plaintiff was and remains unaware of any law that was violated as a result of Mr. Noormohammed's actions.[50] Second, Plaintiff testified that she reported to Mr. Indiero that Mr. Noormohammed "had brought a patient with a pacemaker down into zone three who was not alert and oriented, who could not consent for themselves to the contraindications and the possible things that could happen while altering the pacemaker[.]"[51]  Again, Mr. Indiero denies Plaintiff ever made this report, or any other report of a violation of law or safety, to him. With respect to this report of another alleged safety violation by Mr. Noormohammed, Plaintiff again testified she was and remains unaware of any law that was violated as a result of Mr. Noormohammed's actions.[52]

Third, Plaintiff testified she reported to Senior Imaging Physicist, Dr. Armen Kocharian, that Mr. Noormohammed had misrepresented to her that he had Dr. Kocharian's approval to scan a patient with a

---

[46] *Tex. Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 850 (Tex. App.—Austin 2007, pet. denied) (quoting *Wichita Cnty. v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996)) (analyzing "good faith" in the context of Tex. Gov't Code § 554.002).

[47] *See* Exhibit "O" at 30:24–31:16; 80:6–120:7.

[48] *See* Exhibit "O" at 75:1–5; 80:9–11; 81:16–24.

[49] *See* Exhibit "B."

[50] *See* Exhibit "O" at 86:8–21.

[51] *See* Exhibit "O" at 75:13–20.

[52] *See* Exhibit "O" at 87:21–88:2.

stimulator.[53]   Importantly, Dr. Kocharian is not a supervisor or administrator at Houston Methodist The Woodlands.  Rather, Dr. Kocharian is employed as a Senior Imaging Physicist at only Houston Methodist. Noteworthy is the fact that Mr. Noormohammed was terminated after this report.[54]   Additionally, Plaintiff was and remains unaware of any law that was violated as a result of Mr. Noormohammed's actions.[55]   Fourth, Plaintiff testified she reported to Rhonda Smith, the MRI Lead Technologist hired after Mr. Noormohammed's termination, that Ms. Smith had incorrectly cleared patient implants for scanning.[56] Similarly, Plaintiff was and remains unaware of any law that was violated as a result of Ms. Smith's actions. Fifth, Plaintiff testified that Cynthia Cardoso, an MRI Technologist, had given "contrast to a patient without a physician order[.]"[57]   Importantly, Plaintiff testified that she did not report this incident to anyone at either Houston Methodist or Houston Methodist The Woodlands.[58]   As a result, Defendants cannot be held liable under Texas Health and Safety Code § 161.134.

Sixth, Plaintiff testified she reported to Ms. Smith that Ms. Cardoso inappropriately brought a patient with hearing aids into the scan room.[59]   Plaintiff did not testify that Ms. Cardoso's actions violated any law but testified that she was retaliated against for reporting Ms. Cardoso's action "because Rhonda [Smith] told me I was being difficult."[60]   Seventh, Plaintiff testified Ms. Smith "brought a pacemaker patient down that was not alert and oriented."[61]   Plaintiff similarly did not testify that Ms. Smith's actions violated any law but testified she was retaliated against by Ms. Smith because "her entire attitude changed with me."[62]

---

[53] *See* Exhibit "O" at 88:21–89:11.

[54] *See* Exhibit "O" at 89:9–25.

[55] *See* Exhibit "O" at 94:1–4.

[56] *See* Exhibit "O" at 97:20–24; 98:25–99:2.

[57] *See* Exhibit "O" at 78:23–79:1.

[58] *See* Exhibit "O" at 108:10–13.

[59] *See* Exhibit "O" at 79:1–3; 109:19–24.

[60] *See* Exhibit "O" at 111:5–9; 116:8–11.

[61] *See* Exhibit "O" at 81:10–13; 120:4–7.

[62] *See* Exhibit "O" at 123:2–7.

There is no indication from Plaintiff's testimony that she reported in good faith any violation of law to a supervisor or administrator during her employment at Houston Methodist The Woodlands. More specifically, Plaintiff's testimony that she was and remains unaware of any reported violation of law establishes, as a matter of law, that Plaintiff made no "good faith" report under Texas Health & Safety Code § 161.134. Again, "'[g]ood faith' means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience."[63] Accordingly, Plaintiff's claims for violations of Texas Health & Safety Code § 161.134 fail.

### 2. Plaintiff Was Terminated For Legitimate, Non-Retaliatory Reasons

Assuming *arguendo* Plaintiff can establish the elements of a claim under Texas Health & Safety Code § 161.134, Plaintiff's claim still fails because Plaintiff was terminated for a legitimate, non-discriminatory and non-retaliatory reason.[64] When a defendant offers sufficient evidence to support a finding that a plaintiff was terminated for a legitimate, non-retaliatory reason, the statutory presumption is rebutted and become a "nullity."[65] Here, Plaintiff was terminated for legitimate, non-discriminatory and non-retaliatory reasons on August 26, 2020. Houston Methodist The Woodlands terminated Plaintiff's employment in accordance with several policies after she took a picture of an MRI Safety Screening Form containing patient PHI and sent that picture from her unsecured, personal Yahoo e-mail account to her work account. Specifically, Plaintiff's actions were determined to be in violation of several policies warranting her immediate termination.[66] During her deposition, Plaintiff admitted to the following facts:

1. That she took a picture of PHI with her personal cell phone and sent the picture from her personal Yahoo e-mail account;[67] and

---

[63] *McElyea*, 239 at 850.

[64] *See* TEX. HEALTH & SAFETY CODE § 161.134(f).

[65] *Faulkner v. Dep't of State Health Servs.*, 2009 WL 722983, at *5 (N.D. Tex. Mar. 19, 2009) ("The statutory presumption [in a Texas Whistleblower Act retaliation case] is rebutted and becomes a nullity once a defendant produces sufficient evidence to support a finding that it did not take the adverse personnel action because of the employee's report.") (internal quotation omitted).

[66] *See* Exhibit "H."

[67] *See* Exhibit "O" at 132:5–13; 133:8–17.

2.     She had personal knowledge she was not permitted to email PHI from a personal e-mail account.[68]

It is worth noting that in addition to being terminated for several policy violations and violating Houston Methodist The Woodlands's ICARE values, Plaintiff was also terminated for lying during the investigation into her conduct.[69]  Based on the foregoing, Defendants have articulated legitimate, non-discriminatory and non-retaliatory reasons for terminating Plaintiff's employment.  As a result, there is no statutory presumption of discrimination or retaliation, and Plaintiff must produce evidence showing that she was terminated because she made a good faith report of a violation of law, which she cannot do in this case.

### 3.     Plaintiff Cannot Demonstrate A Fact Issue That She Would Not Have Been Terminated "But For" Any Alleged Report

Without the benefit of the statutory presumption, the burden is on Plaintiff to show her termination would not have occurred when it did "but for" her good faith report of a violation of law.[70]  Evidence that an adverse employment action preceded a reported violation of law is not enough, standing alone.[71]  Furthermore, a plaintiff's subjective belief of retaliation, without more, will not support a claim against the defendant.[72]  Here, Plaintiff has no evidence other than her subjective belief that she was terminated because she made a good faith report of a violation of law.  Ultimately, Plaintiff cannot provide evidence that she would not have been terminated "but for" any alleged report of a violation of law.  For these reasons, Plaintiff's claims under Texas Health & Safety Code § 161.134 fail as a matter of law.

---

[68] *See* Exhibit "O" at 133:14–17.

[69] *See* Exhibit "H."

[70] *Almeida v. Bio-Med. Applications of Tex., Inc.*, 2017 WL 3841928, at *6 (W.D. Tex. Aug. 31, 2017), aff'd, 907 F.3d 876 (5th Cir. 2018) (citing *Tex. Dep't of Human Servs. of the State of Tex. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995) (concluding that the but-for causation standard applies in whistleblower and similar cases)).

[71] See id. (citing *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 69 (Tex. 2000) (analyzing the but-for causation standard in the context of Tex. Gov't Code § 554.002)).

[72] *Id.*

**B.      Plaintiff's FMLA Interference Claim Fails As A Matter Of Law**

Plaintiff conclusively alleges that Defendants' "action[s] in response to Plaintiff's request [for FMLA leave] were in direct violation of the FMLA."[73]

### 1.      Plaintiff Cannot Establish A *Prima Facie* FMLA Interference Claim

"To establish a *prima facie* case of FMLA interference, a plaintiff must show: (1) [s]he was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [s]he was entitled to leave; (4) [s]he gave proper notice of [her] intention to take FMLA leave; and (5) [her] employer denied [her] benefits to which [s]he was entitled to under the FMLA."[74]   Plaintiff's FMLA interference claim fails because Defendants did not deny Plaintiff benefits to which she was entitled to under the FMLA.

As an initial matter, Defendants do not administer, approve, or deny FMLA leave applications submitted by employees.[75]   Rather, Cigna—a third-party provider—administers employee requests for FMLA leave for Defendants.[76]   Plaintiff testified to her awareness that Defendants do not administer, approve, or deny FMLA leave requests.[77]   On or around July 29, 2020, Plaintiff applied through Cigna for intermittent leave under the FMLA.[78]   On or around August 22, 2020, Plaintiff was informed by Cigna that her request for intermittent leave had been denied because Plaintiff had not returned the medical certification required under the FMLA to establish entitlement to benefits.[79]   Plaintiff confirmed this by testifying that she "began the process of trying to file for FMLA" leave but was "unable to complete the process."[80]   Plaintiff also admitted that Cigna denied Plaintiff's request for FMLA benefits because the "Certification [Was] Not Returned."[81]

---

[73] Dkt. 15, ¶ 48.

[74] *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

[75] *See* Exhibit "O" at 180:22–181:11.

[76] *See* Exhibit "O" at 180:22–181:11.

[77] *See* Exhibit "O" at 180:22–181:11.

[78] *See* Exhibit "M."

[79] *See* Exhibit "N"; *see also* 29 U.S.C. § 2613.

[80] *See* Exhibit O" at 179:16–19.

[81] *See* Exhibit "P."

In *Mauder v. Metropolitan Transit Authority of Harris County*, the Fifth Circuit confirmed that an employee is entitled to benefits under the FMLA if she satisfies the statutory requirements, regardless of the intent of the employer.[82]   One of those statutory requirements is that a request for leave be supported by a medical certification issued by a health care provider.[83]   Here, because Plaintiff failed to submit the medical certification required to establish entitlement to benefits under the FMLA, Plaintiff's application for FMLA leave was denied.   Accordingly, Plaintiff's FMLA interference claim fails as a matter of law and must be dismissed because Defendants did not deny Plaintiff benefits to which she was entitled to under the FMLA.

### 2.   Houston Methodist The Woodlands's Legitimate, Non-Retaliatory Reasons For Denying Plaintiff FMLA Leave

Even if Plaintiff could establish a *prima facie* case of FMLA interference, Houston Methodist The Woodlands made the decision to terminate Plaintiff's employment for legitimate, non-retaliatory reasons.[84] Houston Methodist The Woodlands denied Plaintiff leave under the FMLA because she failed to return the requisite medical authorization necessary to establish entitlement to FMLA benefits.[85]

### 3.   Plaintiff Has No Evidence Houston Methodist The Woodlands's Reasons For Termination Were Pretextual

Once an employer articulates a legitimate, non-retaliatory reason for the adverse employment action the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for retaliation.[86]   To do this, Plaintiff must rebut each reason articulated by the employer.[87]   Plaintiff cannot meet this burden.   Plaintiff will not offer any credible evidence to contradict Houston Methodist The Woodlands's reasonable and good faith belief that Plaintiff was not entitled to FMLA benefits because she failed to return the requisite medical certification necessary to establish her entitlement

---

[82]   *Mauder v. Metro. Transit Auth. of Harris County, Tex.*, 446 F.3d 574, 580 (5th Cir. 2006).

[83]   29 U.S.C. § 2613.

[84]   *Caldwell*, 850 F.3d at 245.

[85]   *See* Exhibit "N"; *see also* Exhibit "P."

[86]   *Tatum v. S. Co. Services, Inc.*, 930 F.3d 709, 713 (5th Cir. 2019) (citing *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)).

[87]   *Moini v. Univ. of Texas at Austin*, 832 F. Supp. 2d 1160, 1165 (5th Cir. 1993).

to FLMA benefits.  Further, there is no evidence to indicate that the ultimate decisionmakers did not make the decision to deny Plaintiff FMLA benefits in good faith.  Plaintiff's mere subjective and conclusory beliefs are insufficient as a matter of law to create a fact issue as to pretext.[88]  Accordingly, Defendants are entitled to summary judgment on Plaintiff's FMLA interference claim.

## C.     Plaintiff's Sex Discrimination Claim Fails As A Matter Of Law

Plaintiff alleges that Mr. Indiero—the only person Plaintiff alleges discriminated against her because of her sex[89]—discriminated against her by referring to her and others as "you girls," and by asking Plaintiff "why do you have to be so emotional?"[90]  Because Plaintiff relies on circumstantial evidence—her own subjective "gut feeling"—that Houston Methodist The Woodlands terminated her due to her sex, her claims are evaluated under the *McDonnell Douglas* burden-shifting framework.[91]  First, as a threshold step, the plaintiff-employee must establish a *prima facie* case of discrimination.[92]  If the plaintiff-employee successfully establishes a *prima facie* case, the inquiry continues to a second step, which requires the defendant-employer to provide a legitimate, non-discriminatory reason for the employee's termination.[93]  If the defendant-employer provides an adequate, non-discriminatory reason for the plaintiff-employee's termination then the presumption of discrimination "disappears"[94] and the inquiry proceeds to a third and final step, necessitating the plaintiff-employee to "prove, by a preponderance of the evidence, that the proffered reason was mere pretext for discrimination."[95]  As provided below, Plaintiff fails every step of this analysis.

---

[88]  *Moini v. Univ. of Texas at Austin*, 832 F. Supp. 2d 1160, 1165 (5th Cir. 1993) .

[89]  *See* Exhibit "O" at 170:7–8.

[90]  *See* Exhibit "O" at 164:13–165:5.

[91]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000); *Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 601 (5th Cir. 2015).

[92]  *Byers*, 209 F.3d at 425.

[93]  *Id.*

[94]  *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004).

[95]  *Byers*, 209 F.3d at 425.

1.    **Plaintiff Cannot Establish A *Prima Facie* Sex Discrimination Claim**

To establish a *prima facie* case of discrimination, Plaintiff must show "(1) she was a member of a protected class; (2) she suffered an adverse employment action; and (3) non-protected class employees were not treated similarly."[96]  Defendants do not dispute that Plaintiff is a female and that she suffered an adverse employment action in that Houston Methodist The Woodlands terminated her employment.  As a result, only the third element of Plaintiff's *prima facie* case—that non-protected class employees were not treated similarly——is at issue in this Motion.

Plaintiff is unable to establish a *prima facie* case of sex discrimination as a matter of law because she cannot show that any other employees not in her protected class—but who are similarly situated—were treated differently.  To satisfy this element of a *prima facie* case, a plaintiff "must show that … employees [who were not members of the plaintiff's protected class] were treated differently under circumstances nearly identical to [hers]."[97]  "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared **held the same job or responsibilities**, shared the same supervisor, or had their employment status determined by the same person, **and have essentially comparable violation histories**."[98]  Further, "the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions."[99]

**Plaintiff testified at her deposition that she was unaware of a male MRI Technologist who sent PHI from his personal e-mail account to his work e-mail account who was not terminated.[100]** Interestingly, Plaintiff testified that a male MRI Technologist was terminated under similar circumstances to hers (i.e., lying in an investigation), which further supports Defendants' argument that Plaintiff was not

---

[96]  *Id.*

[97]  *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012).

[98]  *Id.*

[99]  *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (internal quotation marks omitted).

[100]  *See* Exhibit "O" at 173:2–6.

discriminated or retaliated against when she was terminated by Houston Methodist The Woodlands.[101]

Because there is no evidence that similarly situated employees outside of Plaintiff's protected class were treated more favorably, she has failed to establish a *prima facie* case of discrimination. Accordingly, Defendants are entitled to summary judgment as a matter of law on Plaintiff's sex discrimination claim.

2.   **Houston Methodist The Woodlands's Legitimate, Non-Discriminatory Reasons for Termination**

Even if Plaintiff could establish a *prima facie* case of sex discrimination, which she cannot, Defendants can satisfy their burden under the second step of the *McDonnell Douglas* burden-shifting analysis because Plaintiff's employment was terminated for legitimate, non-discriminatory reasons. Defendants are only required to produce evidence "sufficient to support a legitimate, nondiscriminatory reason for the adverse employment action."[102] **"The burden is one of production only, not persuasion."**[103]

Here, Houston Methodist The Woodlands terminated Plaintiff's employment for violating several polices, violating ICARE values, and lying during an investigation.[104] Specifically, Houston Methodist The Woodlands conducted a detailed investigation, which ultimately determined that Plaintiff, without authorization, released PHI by photographing a document containing PHI and sending that photograph through her personal Yahoo e-mail account.[105] It was determined that "this unauthorized release of PHI was done without any concern for the safety of this patient's information when attaching it to a personal, Yahoo email account."[106] Based on the information collected, Plaintiff's actions were "categorized as a Level 3 offense" warranting her immediate termination.[107] Additionally, Plaintiff lied during an investigation into her

---

[101] *See* Exhibit "O" at 89:19–25.

[102] *Little v. Tex. Dept. of Criminal Justice*, 177 S.W.3d 624, 631 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see also Carr v. Farmers Services, LLC*, 2010 WL 11444156, at *3 (W.D. Tex. Mar. 17, 2010).

[103] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).

[104] *See* Exhibit "H."

[105] *See* Exhibit "I."

[106] *See* Exhibit "I."

[107] *See* Exhibit "I."

conduct.[108]    And finally, Plaintiff's conduct was found to be in violation of Houston Methodist The Woodlands's ICARE values.[109]

Houston Methodist The Woodlands has articulated three legitimate, non-discriminatory reasons for terminating Plaintiff's employment.  As a result, there is no presumption of discrimination, even assuming Plaintiff could establish a *prima facie* case—which she cannot.

### 3.    Plaintiff Cannot Show That The Reasons For Termination Were Pretext For Unlawful Discrimination

Assuming *arguendo* Plaintiff was able to establish a *prima facie* case of discrimination—which she cannot—in order to survive summary judgment, she still must submit evidence that the "real reason" for the employment action was unlawful discrimination.[110]   In order to demonstrate that Houston Methodist The Woodlands's reasons for terminating her employment were pretextual, Plaintiff must "rebut each non-discriminatory … reason articulated by the employer."[111]   Plaintiff cannot meet her burden.

### i.    Houston Methodist The Woodlands's Reasons For Terminating Plaintiff Were Accurate And In Good Faith

"When an employee is discharged for failing to comply with a work rule, the issue is whether the employer reasonably and in good faith believed that the violation occurred."[112]   In this case, Plaintiff was observed taking a picture with her personal cell phone of an MRI Safety Screening form that contained patient PHI.  Plaintiff's action and unauthorized release of PHI ultimately resulted in her termination for three different reasons (i.e., violation of company policy, violation of ICARE values, and lying during an investigation into her conduct).  The issue for the Court is not whether the decision to terminate Plaintiff was erroneous but whether the decision was pretextual.[113]

---

[108]  *See* Exhibit "H."

[109]  *See* Exhibit "H."

[110]  *Black v. Pan Am. Labs., LLC*, 2009 WL 10669148, at *4 (W.D. Tex. May 13, 2009).

[111]  *Moini*, 832 F. Supp. 2d at 716.

[112]  *Bardwell v. Global Santa Fe Drilling Co.*, 2007 WL 2446801, at *11 (S.D. Tex. Aug. 23, 2007).

[113]  *Chamblee v. Mississippi Farm Bureau Fed'n*, 551 F. App'x 757, 760 (5th Cir. 2014).

As previously mentioned, Plaintiff has no evidence that Houston Methodist The Woodlands did not reasonably and in good faith believe that Plaintiff violated its policies and standards and that Plaintiff lied during the investigation into her conduct.  Houston Methodist The Woodlands based its decision to terminate Plaintiff for the following reasons after a thorough investigation:

- Acting in contravention with ICARE Values;

- Violating HR01 Policy "Managing for Performance" by providing false information during the internal investigation;

- Violating HR12 Policy "Confidentiality and Information Security Agreement" by releasing PHI from her personal cell phone to her personal Yahoo e-mail account without authorization;

- Breaching the Confidentiality and Security Agreement;

- Violating IM01 Policy "Acceptable Use of Computing Resources" by capturing and storing personal PHI on an unsecured mobile device; and

- Plaintiff lying during the investigation into her conduct.[114]

Defendants' summary judgment evidence demonstrates that Houston Methodist The Woodlands launched a thorough investigation and reviewed Plaintiff's actions prior to taking action against Plaintiff.[115] Plaintiff admitted she photographed PHI on her personal device and e-mailed it from her personal Yahoo e-mail account, but alleges that the reasons underlying her termination decision were without basis because she did not intend to harm a patient and did not initially realize that the picture contained PHI and was sent via her unsecured Yahoo e-mail account.[116]

"Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."[117]  There is no "protection from arbitrary or even erroneous personnel decisions, only those unlawfully motivated."[118]  Here, there is simply no evidence to demonstrate the decisionmaker (Mr. Indiero)

---

[114] Exhibit "H."

[115] *See* Exhibit "I."

[116] *See* Exhibit "O" at 132:5–133:17.

[117] *LeMarie v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

[118] *Id.*

acted in bad faith when relying on the outcome of the investigation as pretext for an otherwise discriminatory decision.[119]

### ii.     Defendants Are Entitled To The Same Actor Inference

Defendants are entitled to the same actor inference because Mr. Indiero both hired and terminated Plaintiff.[120]   "The 'same actor inference' rule was first adopted by the Fifth Circuit in *Brown v. CSC Logic, Inc.*"[121] The Fifth Circuit explained this rule as follows: "claims that employer animus exists in termination but not in hiring seem irrational.   From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job."[122]

"The relevance of the fact that the employee was hired and fired by the same person within a relatively short time span comes in at the third [or pretext] stage of the [*McDonnell Douglas*] analysis."[123]   When the same supervisory employee hires and fires a plaintiff within a short period of time, "a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer."

Here, Mr. Indiero hired Plaintiff in February 2019, and terminated her effective August 26, 2020. Because Mr. Indiero—the only alleged person to have discriminated against Plaintiff based on her gender— both hired and fired Plaintiff, a strong inference exists which Plaintiff must overcome that discrimination was not a determining factor for her termination.

### D.     Plaintiff's Hostile Work Environment Claim Fails As Matter Of Law

Under both Title VII and the Texas Labor Code, to survive summary judgment on a sex harassment/hostile work environment claim, a plaintiff must show: (1) she belongs to a protected group; (2)

---

[119]  *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (holding that a JMOL was warranted because the employee failed to show that the employer's proffered reason for termination, that he was suspected of theft was not pretext, even though employee denied he had committed theft); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091–92 (5th Cir. 1995) (granting summary judgment on a race discrimination claim).

[120]  *See* Exhibit "B."

[121]   *Garza v. Ranier L.L.C.*, 2013 WL 3967786, at *6 (W.D. Tex. July 31, 2013) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir.1996)).

[122]  *Id.*

[123]  *Id.* (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991).

her employer subjected her to unwelcome harassment; (3) the harassment complaint of was based on her sex; and (4) the harassment affected a term, condition or privilege of employment.[124]   The work environment "must be both objectively and subjectively offensive," meaning both the victim and a reasonable person would find it to be hostile and abusive.[125]

To determine whether an employer's conduct is offensive, courts will look to the totality of the circumstances including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[126]  Harassment affects a "'term, condition, or privilege of employment; [when] it [is] sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment."[127]   Not all workplace harassment affects a term, condition, or privilege of employment.[128]  Alleged harassment "must be more than episodic, it must be sufficiently continuous and concerted in order to be deemed pervasive."[129]

Plaintiff claims her manager, Dominique Wilson, and Mr. Indiero subjected her to a hostile work environment based on her sex.[130]  With respect to Mr. Indiero, Plaintiff testified at her deposition that Mr. Indiero subjected her to a hostile work environment by:

- Calling her into meetings and telling her that her peers disliked her and were constantly complaining about her;

- Telling her that her scrub color was a shade off in violation of policy; and

---

[124]  *Reine v. Honeywell Intern. Inc.*, 362 Fed. Appx. 395, 397 (5th Cir. 2010); *Harris County Hosp. Dist. v. Parker*, 484 S.W.3d 182, 197 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) ("where the claim of harassment is against a supervisor, proving a hostile work environment requires four elements").

[125]  *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir.1999).

[126]  *Long v. Eastfield Coll.*, 88 F.3d 300, 309 (5th Cir. 1996) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)).

[127]  See *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)

[128]  *Shepherd*, 168 F.3d at 874.

[129]  *Faragher v. City of Boca Raton*, 524 U.S. 775, 811 n.1 (1998) (quoting *Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)).

[130]  Exhibit "O" at 52:2–7.

21

- Referring to her as "you girls."[131]

With respect to Mr. Wilson, Plaintiff testified at her deposition that Mr. Wilson subjected her to a hostile work environment by:

- Telling her that her scrub color was a shade off in violation of policy;

- Calling her into the office and asking her why she was being difficult; and

- Constantly changing her work schedule.[132]

Plaintiff has no evidence that the foregoing actions were motivated by the fact that Plaintiff was female. Plaintiff's subjective belief that these actions were because of her gender is insufficient.[133] Plaintiff also has not identified any evidence that would indicate a reasonable person would consider her work environment hostile or abusive. While Plaintiff might believe these alleged actions were abusive, the undisputed evidence demonstrates they were not physically threatening or humiliating or severe, nor did they unreasonably interfere with Plaintiff's ability to perform her job. At worst, Mr. Indiero and Mr. Wilson's alleged actions amount to nothing more than the sort of offhand statements or isolated incidents that the Fifth Circuit has expressly held do not amount to harassment sufficient to establish a hostile work environment claim.

Even if Plaintiff's allegations of mistreatment are true, Plaintiff has no evidence that she endured any treatment severe or pervasive enough to create an actionable wrong. Plaintiff has no evidence that the foregoing alleged actions by Mr. Indiero and Mr. Wilson were anything other than episodic statements and incidents directed at her job performance.[134] For these reasons, Plaintiff's hostile work environment claim fails because Defendants did not subject Plaintiff to unwelcome harassment based on her sex which affected a term, condition, or privilege of employment.

---

[131] Exhibit "O" at 52:20–53:18.

[132] Exhibit "O" at 55:21–56:7; 61:17–62:4.

[133] *See King v. Enter. Leasing Co. of DFW*, 2007 WL 2005541, at *10 (N.D. Tex. July 11, 2007) (Plaintiff must demonstrate a "connection between the allegedly harassing incidents and [their] protected status.").

[134] *Jeffrey v. Dallas County Med. Examiner*, 37 F. Supp. 2d 525, 531 (N.D. Tex. 1999) (stating a hostile work environment claim is actionable only where there is a "long pattern of extensive, unredressed threats or conduct" in the workplace)

**E.      Plaintiff's Retaliation Under Title VII and The Texas Labor Code Claim Fails As A Matter Of Law**

Plaintiff alleges a claim for retaliation under Title VII and the Texas Labor Code.[135]  Plaintiff alleges "Defendants intentionally and unlawfully retaliated against Plaintiff" due to unidentified conduct protected under Title VII and the Texas Labor Code.[136]

**1.      Plaintiff Cannot Establish A *Prima Facie* Retaliation Claim**

"[R]etaliation claims must be proved according to traditional principles of but-for causation."[137] "However, the but-for standard does not apply at the *prima facie* case stage."[138]  Under both Title VII and the Texas Labor Code, the Plaintiff has the burden to prove a *prima facie* case of retaliation by showing (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.[139]

**i.      Plaintiff Did Not Participate In An Activity Protected By Title VII Or The Texas Labor Code**

Under both Title VII and the Texas Labor Code, 'protected activity' can consist of either: (1) opposing any practice made an unlawful employment practice; or (2) making a charge or complaint, testifying, or participating in any manner in an investigation, proceeding, or hearing.[140]  "The first of these is known as the 'opposition clause;' the second as the 'participation clause.'"[141]  Title VII and the Texas Labor Code do not protect opposition to all forms of unscrupulous conduct.  Instead, only opposition to discrimination based on "race, color, religion, sex, or national origin," is protected.[142]  "Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is

---

[135]  Dkt. 15, ¶¶ 57–60.

[136]  Dkt. 15, ¶ 59.

[137]  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

[138]  *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019).

[139]  *Matthews v. City of Houston Fire Dep't*, 609 F. Supp. 2d 631, 645 (S.D. Tex. 2009) (Rosenthal, L.); *Crutcher v. Dallas Indep. Sch. Dist.*, 410 S.W.3d 487, 493 (Tex. App.—Dallas 2013, no pet.).

[140]  *See* TEX. LAB. CODE § 21.055; *see also* 42 U.S.C. § 2000e-3(a).

[141]  *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016).

[142]  *Brown v. United Parcel Serv., Inc.*, 406 Fed. Appx. 837, 840 (5th Cir. 2010).

at issue."[143]  Defendants are entitled to summary judgment because there is no evidence to create a genuine dispute of material fact as to whether Plaintiff engaged in protected activity under either Title VII or the Texas Labor Code.

In *Brown v. United Parcel Service, Inc.*, the Fifth Circuit analyzed whether the plaintiff engaged in a protected activity.[144]  There, the record indicated that although the plaintiff "complained about unfair work distribution, unpaid overtime, and selective enforcement of a lunch policy shortly before his termination," the plaintiff "did not complain about race, color, religion, sex, or national origin discrimination."[145]  Accordingly, the Fifth Circuit held that "[b]ecause unfair work distribution, unpaid overtime, and selective enforcement of a lunch policy, without more, are not prohibited by Title VII, [plaintiff's] opposition to these practices was not protected by Title VII."[146]

Here, Plaintiff contends that she made three (3) complaints of unlawful conduct during her employment at Houston Methodist The Woodlands.  First, Plaintiff testified that she complained of general unfair treatment via e-mail.[147]  Second, Plaintiff contends that she made a verbal complaint to Human Resources Generalist David Hasha that she was being subjected to unfair treatment, although she could not recall if she specifically complained that the unfair treatment was because of her gender.[148]  Third, Plaintiff contends she similarly made a verbal complaint to Human Resources Generalist Michael Smith that she was being subjected to unfair treatment, although she again could not recall if she specifically complained that the unfair treatment was because of her gender.[149]

---

[143] *Id.*

[144] *Id.*

[145] *Id.*

[146] *Id.*

[147] *See* Exhibit "O" 173:13–174:21.

[148] *See* Exhibit "O" 175:3–19.

[149] *See* Exhibit "O" 175:3–19.

Plaintiff asserts that these three alleged complaints, in part, resulted in her termination on August 26, 2020.[150]  The Fifth Circuit has "consistently held that a vague complaint, without reference to an unlawful employment practice … does not constitute protected activity."[151]  In *Tratree v. BP N. Am. Pipelines, Inc.*, the Fifth Circuit held that "complaining about unfair treatment without specifying why the treatment is unfair … is not protected activity."[152]  Similarly, in *Harris-Child v. Medco Health Solutions, Inc.*, the Fifth Circuit affirmed summary judgment on plaintiff's retaliation claim where plaintiff never "specifically complained of racial or sexual harassment, only harassment."[153]

Here, Plaintiff's vague recollection of complaining about general unfair treatment that may or may not have been on the basis of her gender is insufficient to establish Plaintiff participated in a protected activity under Title VII or the Texas Labor Code.  Accordingly, Plaintiff's retaliation claim fails because Plaintiff did not establish she participated in an activity protected by Title VII or the Texas Labor Code.

### ii.   There Is No Causal Connection Between Any Protected Activity And An Adverse Employment Action

Plaintiff's retaliation claim also fails because there is no causal connection between any alleged protected activity and any adverse employment action.  For example, in *Alubaidy v. Flexsteel Pipeline Technologies, Inc*, the court found that there was "no evidence beyond [the plaintiff's subjective belief" that the alleged protected activity was connected to the adverse employment action.[154]  Here, there are three instances of alleged protected activity — (1) Plaintiff's e-mail complaining of unfair treatment; (2) Plaintiff's verbal complaint to Mr. Hasha complaining of unfair treatment; and (3) Plaintiff's verbal complaint to Mr. Smith complaining of unfair treatment. Other than Plaintiff's "subjective belief," there is no evidence that any of Plaintiff's complaints are connected to the termination of her employment.  Accordingly, and for this additional reason, Plaintiff's retaliation claim under Title VII and the Texas Labor Code fails.

---

[150]  *See* Exhibit "O" at 177:5–16.

[151]  *Davis v. Dallas Indep. Sch. Dist.*, 448 Fed. Appx. 485, 493 (5th Cir. 2011).

[152]  *Tratree v. BP N. Am. Pipelines, Inc.*, 277 Fed.Appx. 390, 395 (5th Cir. 2008).

[153]  *Harris–Childs v. Medco Health Solutions, Inc.*, 169 Fed.Appx. 913, 916 (5th Cir. 2006).

[154]  *Alubaidy v. Flexsteel Pipeline Techs., Inc.*, H-19-4398, 2021 WL 2366091, at *3 (S.D. Tex. June 9, 2021).

### 2. Houston Methodist The Woodlands's Legitimate, Non-Retaliatory Reasons For Termination

Even if Plaintiff could establish a *prima facie* case of retaliation, Houston Methodist The Woodlands made the decision to terminate Plaintiff's employment for legitimate, non-retaliatory reasons. Houston Methodist The Woodlands terminated Plaintiff's employment pursuant to several policies after she, without authorization, photographed patient PHI and sent that PHI via her unsecure Yahoo e-mail account.[155] In addition, Houston Methodist The Woodlands terminated Plaintiff for violating its ICARE values and lying during the investigation into her conduct.[156]

### 3. Plaintiff Has No Evidence Of "But-For" Causation

Because Defendants have submitted legitimate, non-retaliatory reasons, in order to survive summary judgment, Plaintiff must submit evidence that her termination would not have occurred "but for" her protected activity.[157] In other words, Plaintiff must prove that she would not have been terminated "but for" engaging in the protected activity.[158] As discussed above, Plaintiff has no evidence of any causal connection between her alleged protected activities and her termination. There is no evidence that Plaintiff was terminated because she made any complaint, none of which are protected activities under wither Title VII or the Texas Labor Code.

In sum, Plaintiff has no evidence whatsoever that her termination would not have occurred "but for" her alleged protected activities. Consequently, Defendants are entitled to summary judgment on Plaintiff's claim for retaliation under both the Texas Labor Code and Title VII.

---

[155] Exhibit "H."

[156] Exhibit "H."

[157] See *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019).

[158] *Id.*

**F.     Plaintiff's Claims Against Houston Methodist Fail Because Houston Methodist Was Not Plaintiff's "Employer"**

Houston Methodist is entitled to summary judgment on all claims against it because it was never Plaintiff's employer.  Plaintiff admitted Houston Methodist was not her employer.[159]  At all relevant times, Plaintiff was undisputedly employed by Houston Methodist The Woodlands.[160]  Despite this fact, Plaintiff has asserted claims against Houston Methodist for sex discrimination, retaliation, and hostile work environment under Title VII and the Texas Labor Code, violations of Texas Health and & Safety Code § 161.134, and FMLA interference.

With respect to Plaintiff's claims for sex discrimination, retaliation, and hostile work environment under Title VII, in the absence of a direct employment relationship, to maintain standing a plaintiff must show that an employer "using its position of power and control, adversely and wrongfully interfered with plaintiff's employment relationship with a third party."[161]  Here, Plaintiff has no evidence that Houston Methodist adversely or wrongfully interfered with Plaintiff's employment relationship with Houston Methodist The Woodlands.

With respect to Plaintiff's claims for sex discrimination, retaliation, and hostile work environment under the Texas Labor Code, to maintain standing Plaintiff "must show: (1) that the defendant is an employer within the statutory definition of the Act, (2) that some sort of employment relationship exists between the plaintiff and a third party, and (3) that the defendant controlled access to the plaintiff's employment opportunities and denied or interfered with that access based on unlawful criteria."[162]  Here, Plaintiff has no evidence that Houston Methodist controlled access to Plaintiff's employment opportunities with Houston Methodist The Woodlands and denied or interfered with that access based on unlawful criteria.  For these

---

[159]  *See* Exhibit "P."

[160]  *See* Dkt. 15, ¶ 14.

[161]  *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 147 (Tex. 1999) (citing *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1341–43 (D.C. Cir. 1973)).

[162]  *Rennels*, 994 S.W.2d at 147 (omitting internal citations).

reasons, Plaintiff's claims under Title VII and the Texas Labor Code against Houston Methodist fail at the outset.

"However, in contrast with 'employer' under Title VII [and the Texas Labor Code], there is no analogous authority compelling a liberal construction of the term 'employer' or 'employee' for purposes of § 161.134."[163]   Further "[s]ection 161.134 unambiguously provides relief only for *employees*" of a hospital or treatment facility.[164]   Here, Plaintiff was never employed by Houston Methodist and at all relevant times was employed only by Houston Methodist The Woodlands.[165]   Accordingly, Plaintiff's claims against Houston Methodist under Texas Health and Safety Code § 161.134 fail as a matter of law.

With respect to Plaintiff's claim for FMLA interference, Plaintiff must, as an initial matter, establish she was an "eligible employee" under the FMLA.[166]   In other words, Plaintiff must establish she was employed for at least twelve (12) months by the employer with respect to whom leave is requested, and for at least 1,250 hours of service with such employer during the previous 12-month period.[167]   Here, Plaintiff has no evidence––and cannot establish—she was employed by Houston Methodist for at least twelve (12) months prior to requesting leave.   Therefore, Plaintiff's claim for FMLA interference fails at the outset.   Based on the foregoing, Plaintiff's claims against Houston Methodist fail in their entirety without necessitating further analysis.

---

[163] *Janaki v. C.H. Wilkinson Physician Network*, 624 S.W.3d 623, 631 (Tex. App.—Corpus Christi 2021, no pet.) ("Having considered the unambiguity of the statute, the existence of a separate statute addressing retaliation claims by non-employees, and because the legislature has not expressly guided us to consider federal law in applying § 161.134 or to interpret it broadly, we decline to extend the single, integrated enterprise theory to § 161.134.")

[164] *Id.*

[165] *See* Dkt. 15, ¶ 14.

[166] *See* 29 U.S.C. § 2611 (2)(A).

[167] *Id.*

**G.  Plaintiff's Claims Against Houston Methodist Under Title VII And The Texas Labor Code Fail Because Plaintiff Failed To File A Charge Of Discrimination Naming Houston Methodist As A Respondent**

In her Amended Original Complaint, Plaintiff alleges Houston Methodist discriminated and retaliated against her because of her sex and subjected her to a hostile work environment.[168]   However, Plaintiff failed to exhaust her administrative remedies with respect to Houston Methodist for the foregoing claims because she did not file a Charge of Discrimination naming Houston Methodist as a respondent.   The only entity named in her Charge of Discrimination was Houston Methodist The Woodlands.[169]

Both Title VII and the Texas Labor Code require employees to exhaust their administrative remedies before seeking judicial relief.[170]   Employees in the private sector "must satisfy this requirement by filing an administrative charge with the EEOC."[171]   "The charge enables the EEOC to investigate and, if appropriate, negotiate a resolution with an employer," and "[o]nly after administrative efforts terminate may the employee sue the employer in federal court."[172]   Courts have no jurisdiction to consider claims as to which the aggrieved party has not exhausted administrative remedies.[173]   Permitting lawsuits that exceed the scope of the EEOC investigation "would thwart the administrative process and peremptorily substitute litigation for conciliation."[174]

In *Bryant v. Western Elec. Co., Inc.*, the Fifth Circuit considered defendant's motion for summary judgment "on the ground that the plaintiff failed to file a timely charge against the defendant."[175]   There, "[t]he fact that the plaintiff did not file a charge against the defendant within the time limitation provided" was undisputed.[176]   Relying on the "settled" principle that the timey filing of a charge is a prerequisite to the

---

[168]   *See* Dkt. 15, ¶¶ 49–60.

[169]   *See* Exhibit "A."

[170]   *See* 42 U.S.C. § 2000.201–.202. e-5; *see also* Tex. Lab. Code §§ 21

[171]   *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 n.6 (5th Cir. 2006)).

[172]   *Id.*

[173]   *Simmons-Myers v. Caesars Entm't Corp.*, 515 Fed. Appx. 269, 272 (5th Cir. 2013) (per curiam).

[174]   *McClain*, 519 F.3d at 273.

[175]   *Bryant v. W. Elec. Co., Inc.*, 572 F.2d 1087 (5th Cir. 1978).

[176]   *Id.* at 1088. )

maintenance of a Title VII lawsuit against a defendant, the Fifth Circuit granted defendant's motion for summary judgment.[177]

Similarly, it is undisputed that at no time before, during or after filing this lawsuit did Plaintiff filed a Charge of Discrimination against Houston Methodist.  Rather, after filing this lawsuit, Plaintiff filed a Charge of Discrimination undisputedly naming only Houston Methodist The Woodlands as her employer and respondent.[178]  Because Plaintiff failed to file a Charge of Discrimination naming Houston Methodist as a respondent, this Court has no jurisdiction to consider Plaintiff's claims against Houston Methodist under Title VII or the Texas Labor Code.  For this additional reason, Houston Methodist is entitled to summary judgment on Plaintiff's claims for sex discrimination, retaliation, and hostile work environment under Title VII and the Texas Labor Code.

## VI.    CONCLUSION

Based on the foregoing, Defendants respectfully request the Court grant Defendants' Motion for Summary Judgment, dismiss Plaintiff's claims in their entirety, and aware Defendants any other relief to which Defendants may be entitled.

SCOTT PATTON PC

By: /s/ Daniel Patton
        Daniel Patton
        Federal Bar No. 26200
        Texas Bar No. 24013302
        dpatton@scottpattonlaw.com

        ATTORNEY IN CHARGE FOR DEFENDANTS

OF COUNSEL:

Michael Twomey
Federal Bar No. 608043
Texas Bar No. 24070776
mtwomey@scottpattonlaw.com
Brooke Jones
Federal Bar No. 3342076

---

[177] Id.  )

[178] Exhibit "A."

30

Texas Bar No. 24107537
*bjones@scottpattonlaw.com*
**SCOTT PATTON PC**
5301 Katy Freeway, Suite 201
Houston, Texas 77007
Phone: (281) 377-3311
Fax:     (281) 377-3267

## CERTIFICATE OF SERVICE

I certify that on November 12, 2021, a true and correct copy of *Defendants' Motion for Summary Judgment* was served on all counsel of record by the Court's ECF filing system.

*/s/ Daniel Patton*
Daniel Patton