# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **AMANDA OLICIA** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | **CIVIL ACTION NO. 4:21-CV-01184** |
| v. | § | |
| | § | |
| | § | |
| **THE METHODIST HOSPITAL D/B/A** | § | **JURY TRIAL DEMANDED** |
| **THE METHODIST HOSPITAL** | § | |
| **SYSTEM, HOUSTON METHODIST** | § | |
| **THE WOODLANDS HOSPITAL** | § | |
| Defendant. | § | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANT MOTION FOR SUMMARY JUDGMENT

---

## **<u>TABLE OF CONTENTS</u>**

Table of Contents…………………………………………………………..………..2

Summary of the Arguments……………………………………………..…………3-4

Introduction………………………………………………………………..………4-5

Background…………………………………………………..……………………5-7

Arguments and Authorities………………………………..…………………….8-18

    A. Courts Must Look At The Evidences In A Light Most Favorable To the Opposing Party In Ruling On Summary Judgement…………………………8-9

    B. Retaliation Claims for Safety Reports……………………………………..10-12

    C. FMLA Interference Claim……………………………………………………12-13

    D. Claims against Methodist Hospital………………………………………  14-15

    E. Discrimination under Title VII and the Texas Labor Code………………  15-18

    *i. Gender Discrimination Under Title VII and the Texas Labor Code*…………16-17

    *ii. Hostile Work Environment under Title VII and the Texas Labor Code*…......17-18

    F. Defendant Failed to Meet its Burden Is Fatal to Summary Judgement……..…18

CONCLUSION and PRAYER…………………………………………………24-25

Plaintiff Amanda Olicia submits this Response to Defendant's Motion for Summary Judgment and in support thereof respectfully show as follows:

## I.      Summary of the Arguments

Defendant's Motion for Summary Judgment should be denied because:

- Olicia was an excellent employee with a significant history of good performance as an MRI technologist at Methodist Hospital, dating back to 2016.[1]

- Olicia reported a number of safety violations related to ensuring patient safety prior to exposing patents with medical impacts inside their bodies to the powerful magnetic field used by the MRI scan. These reports were made to the Ethics Hotline, Human Resources, Olicia's supervisor, Olicia's manager, Olicia's Director, and the Vice President of Human Resources for the Methodist System. Olicia reasonably believed that such safety violations constituted violations of law. [2]

- After those reports, Olicia was targeted and harassed and had her schedule changed multiple times, unlike newer employees in the same department who had not reported safety violations.

- Because those reports were being ignored, Olicia documented a specific safety violation by taking a photo of an intake form that was improperly filled out.

- After Olicia's report, Methodist Hospital investigated Olicia rather than the safety violation.[3]

- Methodist Hospital terminated Olicia shortly after that safety violation report and claimed that the reason was that Olicia violated HIPAA.

_____

[1] Exhibit 7, 8, 9

[2] Exhibits 44, 51, 59, 60

[3] Exhibit 1, 2, 24

However, other employees took photographs of patient information with their personal cell phones and were not disciplined. Defendant's reason is pretextual.[4]

- Olicia was not intentionally deceptive in the investigation. In fact, she was very honest and transparent.

- Unlike Olicia, a male employee was the subject of a safety violation report based on a situation that could have actually harmed the patient. The male employee was not investigated or disciplined based on the initial report.[5]

- Due to Olicia's changing schedule, she needed intermittent FMLA leave to take care of her son. She requested the leave, but she was immediately questioned by her supervisor about the need for leave and had her schedule changed even more often, preventing her from being able to visit the doctor to obtain and return the certifications.[6]

- Defendants do not offer any affirmative evidence that Houston Methodist was not Olicia's employer. Instead, they primarily rely on a reference to Olicia's employment at the Woodlands locations as support. However, there are a number of examples where Houston Methodist is acting as Olicia's employer, specifically related to safety issues.[7]


## II.    Introduction

Olicia has brought this action alleging violations of the Texas Health and Safety Code, § 161.134 for retaliation after a report of a violation of law, FMLA interference, and gender discrimination in violation of Title VII and the Texas Labor Code. Defendants have failed to meet their burden for a number of reasons, and this Court should deny their motion and permit Olicia to proceed to trial.

---

[4] Exhibit 11

[5] Exhibit 1

[6] Exhibit 33

[7]  Exhibits 18, 19, 27, 28, 29,30, 31, 32, 34, 35,36,37, 38, 39, 40, 41, 42, 43

### III.    Background

Olicia first worked for Methodist Hospital as an X-Ray technologist from 2005-2006. Exhibit 1, Olicia Decl., ¶ 2. Olicia returned to work for Methodist Hospital in January of 2016, then as an MRI Technologist. *Id.* In 2019, Olicia transferred to the Woodlands location of Houston Methodist. *Id.* Notably, Methodist Hospital gave Olicia a Five-Year Anniversary award at the Woodlands location, necessarily reflecting her previous work with the other Methodist Hospital locations. *Id.*

Olicia has over ten years of experience as an MRI Technologist, and has been a Certified Magnetic Resonance Safety Officer since 2017. *Id.* at ¶¶ 3-4. She has years of experience working with patients who have implantable devices that must be properly cleared, or evaluated, prior to performing an MRI. *Id.* at ¶ 5. Olicia has created multiple safety forms and practices that were used at other Methodist locations including safety practices for scanning pacemakers, spinal cord stimulators, vagal nerve stimulators, and pain pumps. *Id.* at ¶ 4. All of those implantable devices can pose a threat to a patient's safety during an MRI if not properly evaluated and could result in the death of patient if not evaluated properly. *Id.*

In Olicia's career, prior to beginning the safety complaints in 2019, there was no history of disciplinary issues, and she was never disciplined for a negative and confrontational attitude. *Id.* at ¶ 6. In fact, she was awarded hospital and department

employee of the month while working at the Willowbrook location of Methodist. *Id.* at ¶ 7.

After transferring to the Woodlands location in 2019, Olicia made reports of patient safety violations to the Ethics Hotline, Human Resources, her supervisor Rhonda Smith, her manager Dominque Wilson, director James Inderio, and Carole Hackett, who was the Vice President of Human Resources for the Methodist System. *Id.* at ¶ 12. Initially, the reports concerned Jeff Noormahamed, who was the Lead MRI Technologist. *Id.* at ¶ 8. During one incident that was reported, Noormahamed failed to properly vet a spinal cord stimulator and scanned the patient against the manufacturer's recommendation. *Id.* Noormahamed then lied about the procedure to Dr. Kocharian and Dr. Northcutt. *Id.* However, no investigation or discipline was done based on the initial report of this incident or previous reports. *Id.* at ¶¶ 9-10. Olicia had to escalate the issue to Dr. Kocharian to address the complaint. *Id.* at ¶ 9. Exhibit 45, 46, 58.

Olicia also reported safety violations committed by Stacy Moye on August 6, 2020, and August 14, 2020. *Id.* at ¶ 24. Moye tried to rush patients through without proper documentation, which was the reason that Olicia documented the incomplete MRI Safety Questionnaire. *Id.* at ¶¶ 19 & 23. Moye had a history of by passing safety in an attempt to rush patients through MRI. Exhibit 10, 49. Olicia was never intentionally deceitful during the investigation; in fact, she disclosed that the incomplete MRI Safety Questionnaire had personally identifiable health information on it after she realized that.

*Id.* at ¶ 19. Additionally, two other employees, Rhonda Smith and Cynthia Cardoso, also captured patient information on their personal cellphones but were not investigated or terminated. *Id.* at ¶ 21. See Exhibit 11.  Although Smith and Cardoso both committed known violations prior to Olicia's termination, both were still employed at the date of Olicia's termination.

After Olicia began reporting these safety violations, Methodist Hospital started retaliating against her. *Id.* at ¶ 17. Exhibit 14, 52. The retaliation included a constant changing of schedules, which did not happen to new employees who had not reported complaints. *Id.* Other employees who reported safety violations were also retaliated against, including Anita Evans, Tricia Clark, and Yesenia Trejo. *Id.* at 30; Evans Decl. at ¶¶ 9 & 10; Clark Decl. at ¶¶ 6, 7, 9, & 17. Due to the retaliation, all four employees who reported safety violations, all women, were either terminated or resigned. Olicia Decl. at ¶ 30; Evans Decl. at ¶ 22; Clark Decl. at ¶¶ 17 & 18. Exhibit 12, Exhibit 13, Exhibit 20, Exhibit 21, Exhibit 22, Exhibit 23.

Methodist Hospital also interfered with Olicia's FMLA entitlement. Olicia Decl. at 29. Specifically, Olicia's manager questioned her about the reason for the FMLA leave and then constantly changed her schedule, prohibiting her from being able to complete the required certifications. *Id.*

Less than thirty days following Olicia's termination, Methodist Hospital posted a job for a MRI Technologist II - MRSO and hired a male employee to replace Olicia. *Id.* at ¶ 16. See Exhibit 17.   And, after Olicia's termination, a male employee committed a significant safety violation that damaged equipment by releasing the liquid cryogen used to maintain the magnetic field but was not terminated. *Id.* at ¶ 31.

Additionally, Houston Methodist was Ms. Olicia's employer. Each location operates under one corporate umbrella.[8] It maintains control over the various medical facilities operating within its system though creation of uniform policies and procedures, as well as corporate branding.

IV.     **Argument & Authorities**

A. Courts Must Look at the Evidence in a Light Most Favorable to the Opposing Party in Ruling on Summary Judgement.

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(a),(c)(1). A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,248 (1986). An issue as to a material fact is genuine "if the evidence is such that

---

[8] https://it.houstonmethodist.org/wp-content/uploads/2021/04/HM-System-Leadership-Org-Chart-3-2021.pdf

a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.") To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsuhita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Id. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-159 (1970)). "However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to material fact". *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts". *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).

The evidence in this case, both circumstantial and direct, clearly establishes genuine issues of material facts, and thus Ms. Olicia has met her burden.

### B.  Retaliation Claims for Safety Reports

Defendants terminated Olicia 12 days after she made a second report of a serious safety violation by Nurse Practitioner Stacy Moye. Exhibit 4 , Olicia Decl., ¶ 24. Texas Health & Safety Code § 161 "promotes reporting all conduct in the health-care context that a reasonable person would conclude constitutes a violation of law." *El Paso HealthCare Sys., Ltd. V. Murphy*, 518 S.W.3d 412, 418-419 (Tex. 2017). Therefore, §161.134 furthers this goal of reporting such conduct "by protecting those who make such reports as §161.132 requires." *Id.* Continuing the thread, §161.132 requires a person associated with a health care facility to make a report if the person "reasonably believes or . . . knows of information that would reasonably cause a person to believe that the . . . conduct . . . is or might be illegal." *Id.* (*citing* Tex. Health & Safety Code §161.132(b)) (alteration in original). In sum, "the statute does not require the plaintiff to prove that the reported conduct in fact violated the law, but instead permits the plaintiff to sue for retaliation if the plaintiff reported a violation of law in good faith." *Id.* Defendant's own policy also encourages employees to make reports about illegal and unethical behavior, and provides an Ethics Hotline for employees to make complaints. Exhibit 66. Olicia made every attempt to make reports about the unlawful behavior she observed and to which she was being subjected. As early as July 26, 2019, Olicia made two calls to the Ethics Hotline at 800-500-0333. See Exhibit 44.

Despite this clear standard, Defendants argue that *they* are entitled to judgment on the retaliation claims based on the safety violation reports simply because Olicia could not name a specific statute violated by Defendants in their unsafe and dangerous operations. But the statute does not require that Olicia be able to cite a specific statute. Instead, Texas law encourages and promotes the reporting of suspected violations of law by protecting employees who report based on a reasonable belief that the conduct was illegal. *Id.* As set forth above, Olicia and others observed and reported conduct that directly endangered patients who were going to be subjected to the powerful magnetic field of the MRI machine. Based on that, Olicia's complaint easily falls within a reasonable belief of a violation of law.

Because Methodist Hospital fired Olicia less than two weeks after her report of a safety violation, the statutory presumption that she was terminated for making the report contained in Texas Health & Safety Code §161.134(f) applies.

> A plaintiff suing under this section has the burden of proof, except that it is a rebuttable presumption that the plaintiff's employment was . . . terminated . . . for making a report related to a violation if the . . . termination . . . occurs before the 60th day after the date on which the plaintiff made a report in good faith.

Texas Health & Safety Code §161.134(f).

Defendant assert that they have rebutted this presumption and are entitled to summary judgment based on an argument that Olicia was terminated for a violation of

policies. However, there is an issue of fact with this defense. In fact, Defendant failed to terminate or discipline or even investigate multiple other employees who have also stored patient information on their personal cell phones and have committed actual safety violations, converting the legitimate, non-retaliatory reason into pretext. Exhibit 11, 55, 61, 64, 65. Also Olicia had a legitimate concern for the public safety, and preventing serious and imminent threats to patients, especially given that fact that Defendant repeatedly disregarded her prior reports. She had no malicious intent, and Documented Defendant's violation  our of concern.[9]

Similarly, Olicia's evidence—whether combined with the statutory presumption or not—is sufficient to enable a trier of fact to find that Olicia's reports were the but-for reason for Defendant's decision to terminate her. This evidence includes not only the direct proof of retaliation against Olicia but also the evidence of all of the other women who reported similar violations. Therefore, this Court should not grant summary judgment and should permit this claim to proceed to trial.

### C.  FMLA Interference Claim

Olicia generally agrees that "[t]o establish a *prima facie* case of FMLA interference, a plaintiff must show: (1) [s]he was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [s]he was entitled to leave; (4) [s]he gave proper notice of [her] intention to take FMLA leave; and (5) [her] employer denied [her] benefits

---

[9] Exhibit 27

to which [s]he was entitled to under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

As an initial matter, Defendant's discussion of, and apparent reliance on, the use of a third-party administrator for their FMLA requests does not somehow relieve Defendants from their responsibility to comply with the FMLA. *See Acker v. Gen. Motors LLC,* No. 4:15-cv-706-A, 2015 U.S. Dist. LEXIS 164066, 2015 WL 8482306, at *3 (N.D. Tex. Dec. 8, 2015) (rejecting FMLA claims against the third-party administrator on a joint employer theory).

Turning to the substance of the claim, Olicia's testimony through her declaration shows that Defendants intentionally prevented Olicia from being able to complete her FMLA certification by constantly changing her schedule. With that in mind, Defendant's argument for summary judgment on the claim must be that, none of their actions matter as long as Olicia did not actually return the certification. But that argument is not consistent with the statute, regulations, or precedent. If the trier of fact credits Olicia's evidence that Defendants have actually interfered with Olicia's efforts to exercise her FMLA rights by preventing her from completing the certification by constantly changing her schedule, then Olicia should prevail on her FMLA interference claim. Therefore, this Court should not grant summary judgment and should permit this claim to proceed to trial. Exhibit 33.

### D.  <u>Claims against Methodist Hospital</u>

Defendants fail to provide any substantive evidence establishing that Methodist Hospital is not Olicia's employer. Instead, Defendants rely on one reference to the Woodlands location in Olicia's complaint and a purported admission in their motion requesting summary judgment for Methodist Hospital.

However, the evidence in this case shows significant involvement and control by Methodist Hospital. For example, the employee handbook acknowledgement, attached as Exhibit D to Defendant's motion, references the "Methodist Hospital System Employee Handbook" and the "policies, procedures and benefits of The Methodist Hospital System." The confidentiality agreement attached as Exhibit E discusses Olicia's "work or association with The Methodist Hospital." Methodist Hospital also uses a safety counsel for MRI safety involving physicians, radiologists, and physicists for the entire hospital system. Exhibit 5, Indiero Dep., pg. 76-77. Olicia was honored with a Five-Year Award after transferring to the Woodlands location, including her time working at other Methodist Hospital locations. Olicia Decl. at ¶ 2. The confidentiality policy mentioned by Defendants as HR12 is a Methodist Hospital policy that lists approximately fifteen different locations under the "applies to" section. Exhibit 6, 15. Further, evidence of Houston Methodist's involvement, control and governance over all Methodist locations and Ms. Olicia's employment is the documentation of the internal policies and Ms.

Olicia's pay records. Exhibit 18, 19, 27, 28, 29,30, 31, 32, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43.

Additionally, Defendants misstate the law regarding the requirement of filing an administrative charge with the EEOC. Defendants assert, "Courts have not jurisdiction to consider claims as to which the aggrieved party has not exhausted administrative remedies." Defendants Motion, pg. 35. However, the United States Supreme Court conclusively ruled that "Title VII's charge-filing requirement is not of jurisdictional cast." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843 (2019). Finally, the body of the EEOC charge identifies Olicia's employer as "the Woodlands location of The Methodist Hospital." Defendant's Motion, Exhibit A. This is more than sufficient to provide notice that Olicia included Methodist Hospital as her employer.

## V.     Discrimination under Title VII and the Texas Labor Code.

Title VII prohibits employment discrimination based on a person's "race, color, religion, sex, or national origin." 42 U.S.C.§ 2000e-2(a)(1). Texas State law under Chapter 21 of the Labor Code prohibits the same. "In employment discrimination cases, a plaintiff may rely on direct or circumstantial evidence, or both." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374,377 (5th Cir. 2010). A plaintiff makes a prima facie case for discrimination by showing she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er]

protected group or was treated less favorably than other similarly situated employees outside the protected group." *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016).

When a plaintiff makes a case on circumstantial evidence, the court assesses her claim under the McDonnell Douglas burden-shifting framework. *See, e.g. Roberson-King v. La. Workforce Comm'n Off. of Workforce Dev.*, 904 F.3d 377, 380 (5th Cir. 2018) (Title VII); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) Under that framework, the plaintiff must first make out a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If she does, the employer must then proffer a legitimate, non-discriminatory reason for the adverse employment action. *Id*. If one is presented, the burden shifts back to the employee, who may then rebut the proffered reason by showing it was pretextual. *Id.* at 804.

*i. Gender Discrimination Under Title VII and the Texas Labor Code*

Ms. Olicia is a member of a protected class. She is a female. She meets the first threshold. She was qualified for the position of MRI Technologist II. She also additionally qualified regarding safety because she has years of experience and a Magnetic Resonance Safety Officer ("MRSO") Certification.   She suffered adverse employment actions when Defendant failed to fully and fairly investigate her claims, targeted her with hostile treatment, and terminated from her job. She was also treated less favorably than other similarly situated employees were not female. Inderio did not initiate investigations against male employees with known violations. Defendant produced no evidence in discovery showing that it declined male employees the same. Defendant also

repeatedly called Olicia and other female employees who made complaints, into meetings but did not do the same regarding the males employees who were the subject of the complaints made by Ms. Olicia and other female employees.[10]

*ii. Hostile Work Environment under Title VII and the Texas Labor Code*

To make out a prima facie hostile work environment claim, a plaintiff must establish that:

> (1) she belong[ed] to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on [her membership in the protected group]; (4) the harassment complained of affected a term, condition, or privilege of her employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

Ms. Olicia has no issue establishing prima facie case for a hostile work environment. As the facts detailed above Ms. Olicia made several complaints to management, HR and through the Ethic Hotline.   Defendant was well aware of the harassment to which Ms. Olicia reported.   Each report sent to Human Resources, was sent back to her department managers. Defendant failed to take her complaints serious and failed to promptly and throughly investigate. Exhibit 22, 23. In fact, Defendant attempted to thwart Ms. Olicia's attempts to seek help outside of the local hospital by discouraging PSNs, an  reports to Dr. Kocharian, the Co-Chair of the Safety Committee and Sr. Physicist for the entire Methodist System. Exhibit 53, 56.

Although multiple complaints were filed by several employees as well as; by and on Olicia's behalf, Defendant turned a blind eye to the reports about issues she was

---

[10] Exhibit 17,57, 63

experiencing. Exhibit 20, 21, 47, 48, 61 Following each complaint escalated to management and HR, Ms. Olicia remained a target. Exhibit 64. Exhibit 26.  Olicia as well as other female employees who made complaints were constantly called into individual meetings with management and HR. However, their complaints about unfair treatment and ongoing safety violations were not addressed or reconciled. Exhibit 2.

### VI.     Defendant Failed to Meet its Burden Is Fatal to Summary Judgement.

Defendant's allegations of evidence of a legitimate business reason in the record is pretext. Ms. Olicia has shown that she became a target after raising and escalating reports of unfair treatment, and safety violations. Defendant intended to silence her complaints by removing her from the workplace rather than investigate and reconcile the issues she and other female employees reported. See Exhibit 26. Exhibit 3 ¶ 9,10,11, and 13. Exhibit 2 ¶ 6,7,8,9, and 17.  She has shown that Defendant did not investigate her complaints and did not fully and fairly investigate the incident leading her her employment. Exhibit 2 ¶ 13.  Olicia  has met her *prima facie* burden with evidence that must be taken as true.  The summary judgment must be denied.

### VII.   Conclusion

Olicia's evidence, taken as true, presents direct and circumstantial evidence of retaliation, a hostile work environment, and discrimination based on gender, and good faith reports of suspected violations of law. For all of the reasons stated above, Olicia respectfully submits that Defendant is not entitled to judgment as a matter of law and

requests that this Court deny Defendant's motion for summary judgment in all things and for such other and further relief to which Plaintiff would be entitled. Exhibit 16.

Respectfully submitted,

/s/ Lisa Ventress
Lisa Ventress
Federal Bar No. 3471199
Texas Bar No. 24076751
1322 Space Park Dr. Ste. C222
Houston, TX 77058
Ph:  832-240-4365
Fax: 832-565-1752
Lisa@theventressfirm.com

**ATTORNEY AMANDA OLICIA**

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2021 a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

/s/ *Lisa Ventress*
Lisa Ventress

SCOTT PATTON PC
Daniel Patton
Federal Bar No. 26200
Texas Bar No. 24013302
dpatton@scottpattonlaw.com
ATTORNEY IN CHARGE FOR DEFENDANT

OF COUNSEL:
Michael Twomey
Federal Bar No. 608043
Texas Bar No. 24070776
mtwomey@scottpattonlaw.com
Brooke Jones
Federal Bar No. 3342076
Texas Bar No. 24107537

Brooke Jones
Federal Bar No. 3342076
Texas Bar No. 24107537
bjones@scottpattonlaw.com

SCOTT PATTON PC
5301 Katy Freeway, Suite 201
Houston, Texas 77007
Phone: (281) 377-3311
Fax: (281) 377-3267