United States District Court
Southern District of Texas

**ENTERED**

January 24, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| AMANDA OLICIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-21-1184 |
| | § | |
| THE METHODIST HOSPITAL D/B/A | § | |
| THE METHODIST HOSPITAL SYSTEM, | § | |
| HOUSTON METHODIST | § | |
| THE WOODLANDS HOSPITAL | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Amanda Olicia sued The Methodist Hospital and Houston Methodist The Woodlands Hospital (together, with the explanation below, "Methodist"), for violations of § 161.134 of the Texas Health and Safety Code, the Texas Commission on Human Rights Act, Title VII of the Civil Rights Act of 1964, and the Family Medical Leave Act. She alleges discrimination based on her sex, retaliation for complaining of safety policy violations, and interference with the leave she requested under the Family Medical Leave Act. The parties conducted discovery, Methodist moved for summary judgment, and the court heard argument on the motion. Based on the pleadings; the motion, response and reply; the applicable law; the summary judgment record; the parties' briefs; and the arguments of counsel, Methodist's motion for summary judgment, (Docket Entry No. 23), is granted. The motion to withdraw deemed admissions, (Docket Entry No. 32), is granted. Final judgment is entered under separate order. The reasons for these rulings are explained below.

## I.     Background

Olicia worked as an X-Ray technologist at Houston Methodist The Woodlands Hospital between February 2019 and August 2020.  (Docket Entry No. 29-1 at 2, 6).  She had previously worked for Methodist Hospital between 2005 and 2006, returning in January 2016 at Houston Methodist Willowbrook.  (Docket Entry No. 29-1 at 2).  She transferred to Houston Methodist The Woodlands Hospital in February 2019, and worked there until she was fired in August 2020.  (Docket Entry No. 29-1 at 2, 6).

Olicia was recognized as an employee of the month while working at Houston Methodist Willowbrook in October 2017.  (Docket Entry No. 29-1 at 3).  She became a Certified Magnetic Resonance Safety Officer in 2017.  (Docket Entry No. 29-1 at 2).  She received a Five-Year Anniversary award in November 2019 while working at Houston Methodist The Woodlands.  (Docket Entry No. 29-1 at 2).  She had no history of disciplinary issues.  (Docket Entry No. 29-1 at 3).

Olicia alleges that when she began working at Houston Methodist The Woodlands in February 2019, she used her ten years of experience as an MRI Technologist to help the hospital implement its MRI safety practices.  (Docket Entry No. 29-1 at 2–3).  Olicia alleges that at Houston Methodist The Woodlands, she noticed her coworkers skipping steps when patients with implants were being prepared for MRIs, in ways that Olicia thought implicated patient safety.  (Docket Entry No. 29-1 at 3).  In her deposition, Olicia described seven times that she noticed safety problems, some of which she reported to her director, James Indiero, or the Senior Imaging Physicist, Dr. Armen Kocharian.  The seven times are described below:

- She reported to Indiero that the lead MRI Lead Technologist, Jeff Noormohammed, represented that a patient with a spinal cord stimulator was safe to scan, when the patient was not because he had been improperly vetted based on the energy deposition rate of the scanner, (Docket Entry No. 23-15 at 21);

- She reported to Indiero that Noormohammed brought a patient with a pacemaker for a scan "who was not alert and oriented, who could not consent for themselves to the contraindications and the possible things that could happen while altering the pacemaker," (Docket Entry No. 23-15 at 21);

- She reported to Kocharian that Noormohammed lied to her and said that he had approval to scan a patient with a stimulator, (Docket Entry No. 23-15 at 21);

- She told Rhonda Smith, the MRI Lead Technologist hired after Noormohammed was fired, that Smith had incorrectly cleared patients with other implants for scanning, (Docket Entry No. 23-15 at 26–27);

- She thought someone else was going to report that Cynthia Cardoso, an MRI Technologist, had given "contrast to a patient without a physician order," (Docket Entry No. 23-15 at 22);

- She told Smith that Cardoso had inappropriately brought a patient with hearing aids into the scan room without removing the aids, (Docket Entry No. 23-15 at 22, 29); and

- Smith "brought a pacemaker patient down that was not alert and oriented," but she could not recall if she reported this.  (Docket Entry No. 23-15 at 22, 33).

In Olicia's response to Methodist's motion for summary judgment, she argues that she reported that Stacey Moye, a nurse practitioner, had committed safety policy violations on August 6, 2020, and August 14, 2020, by "tr[ying] to rush patients through without proper documentation." (Docket Entry No. 29 at 6).  Olicia alleges that she reported safety violations to the Ethics Hotline on July 26, 2019, and that she also "reported conduct that directly endangered patients who were going to be subjected to the powerful magnetic field of the MRI machine."  (Docket Entry No. 29 at 10–11).

Olicia alleges that after she started reporting these shortcuts and safety violations, Methodist retaliated against her by "constantly" changing her schedule.  (Docket Entry No. 29-1 at 4).  She alleges that three other female MRI technologists, Anita Evans, Tricia Clark, and Yesenia Trejo, reported safety problems and were retaliated against.  (Docket Entry No. 29-1 at

3

4).  She alleges that Anita Evans was fired and that Tricia Clark and Yesenia Trejo resigned out of fear of termination.  (Docket Entry No. 29-1 at 7).

On July 29, 2020, Olicia applied through Cigna for intermittent leave under the Family Medical Leave Act.  (Docket Entry No. 23-13).  On August 22, 2020, Olicia was informed by Cigna that her request for intermittent leave had been denied because she had not returned the medical certification required under the Family and Medical Leave Act to establish entitlement to benefits.  (Docket Entry No. 23-14).

On August 14, 2020, Olicia took a picture using her cell phone of MRI documents that contained a patient's "Protected Health Information."  (Docket Entry No. 29-1 at 6; Docket Entry No. 23-15 at 35).  She sent the photograph from her unsecured personal Yahoo email account to her work account.  (Docket Entry No. 23-15 at 35).  Olicia asserts that she took the photograph to show that Stacey Moye had not completed the required MRI Safety Questionnaire for a patient who was being prepared for an MRI.  (Docket Entry No. 29-1 at 5).  Olicia alleges that she disclosed to management that she had photographed and emailed the patient's MRI Safety Questionnaire with Protected Health Information.  (Docket Entry No. 29-1 at 5).

Methodist investigated the incident and confirmed that Olicia's act constituted releasing a patient's Protected Health Information.  The investigation concluded that Olicia showed "blatant disregard for this patient's privacy and security of [Protected Health Information], which is categorized as a Level 3 offense." (Docket Entry No. 23-9 at 3).  A Level 3 offense allows for immediate termination.  (Docket Entry No. 23-8 at 3).  Olicia was fired on August 26, 2020. (Docket Entry No. 23-8 at 3).

The stated reasons for terminating Olicia were that: she violated Methodist's values; violated the policy on "Managing for Performance" by providing false information; violated the

4

policy on "Confidentiality and Information Security Agreement" by releasing Protected Health Information from her personal cell phone to her personal Yahoo e-mail account without authorization; breached the Hospital's Confidentiality and Security Agreement; violated the policy on "Acceptable Use of Computing Resources" by capturing and storing personal Protected Health Information on an unsecured mobile device; and lied during the investigation into her conduct. (Docket Entry No. 23-8).   The Texas Workforce Commission denied Olicia unemployment benefits after concluding that she was fired because of work misconduct.  (Docket Entry No. 23-12 at 5).

Olicia argues that two other employees captured patient information on their cellphones and were not investigated or fired for doing so.  She argues that a male employee was hired to replace her and that another male employee "committed a significant safety violation that damaged equipment by releasing the liquid cryogen used to maintain the magnetic field but was not terminated."  (Docket Entry No. 29 at 8).

Olicia filed this lawsuit on February 22, 2021, and Houston Methodist removed to federal court.  Olicia then filed a Charge of Discrimination with the EEOC against Houston Methodist The Woodlands Hospital, alleging sex discrimination and retaliation.  (Docket Entry No. 23-1).  She filed an amended complaint against both Houston Methodist and Houston Methodist The Woodlands.

Houston Methodist The Woodlands served Olicia with its First Set of Interrogatories, Requests for Production, and Requests for Admission on September 2, 2021.  She did not respond. Houston Methodist The Woodlands argues that Olicia's responses are deemed admitted.  Olicia moves to withdraw the deemed admissions. (Docket Entry No. 32).

## II.   The Summary Judgment Standard and Evidence

### A.      The Legal Standard

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 610 (5th Cir. 2018) (quotations omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating'" that "there is an issue of material fact warranting trial.'"  *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).  The moving party must demonstrate the absence of a genuine issue of material fact, but it need not need to negate the elements of the nonmovant's case.  *Austin v. Kroger Tex., LP*, 864 F.3d 326, 335 (5th Cir. 2017).  "If the moving party fails to meet [its] initial burden, [the summary judgment motion] must be denied, regardless of the nonmovant's response."  *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.,* 749 F.3d 314, 317 (5th Cir. 2014).  "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019).  In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor."  *Waste Mgmt. of La., LLC v. River Birch, Inc.,* 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).  When the facts are undisputed, the court "need only decide whether those undisputed facts are material and entitle the movant to judgment as a matter of law."  *Flowers v. Deutsche Bank Nat. Tr. Co.*, 614 F. App'x 214, 215 (5th Cir. 2015).

### B.    The Record

Methodist submitted the following summary judgment evidence:

- Amanda Olicia's EEOC Charge of Discrimination, (Docket Entry No. 23-1);

- James Indiero's declaration, (Docket Entry No. 23-2);

- Amanda Olicia's employment offer from Houston Methodist Willowbrook Hospital, (Docket Entry No. 23-3);

- Amanda Olicia's acknowledgment receipt of the Houston Methodist Hospital System Employee Handbook, (Docket Entry No. 23-4);

- the Methodist Hospital System's Confidentiality and Information Security Agreement, signed by Amanda Olicia on April 13, 2016, (Docket Entry No. 23-5);

- Houston Methodist The Woodlands offer of employment to Amanda Olicia, (Docket Entry No. 23-6);

- a communication record about Amanda Olicia's conduct, dated July 3, 2019, (Docket Entry No. 23-7);

- the documentation of Amanda Olicia's termination, (Docket Entry No. 23-8);

- an excerpt of email correspondence between Allison Hancock, the director of Health Information Management and Debra Hughes, the director of Human Resources about the investigation in Olicia's conduct, (Docket Entry No. 23-9);

- the disciplinary action guidelines for Houston Methodist the Woodlands, (Docket Entry No. 23-10);

- the Texas Workforce Commission's notice of telephone hearing, (Docket Entry No. 23-11);

- the Texas Workforce's Commission's decision on appeal, (Docket Entry No. 23-12);

- CIGNA Leave Solution's notice of request for leave, (Docket Entry No. 23-13);

- CIGNA Leave Solution's leave status determination, (Docket Entry No. 23-14);

- Amanda Olicia's deposition, (Docket Entry No. 23-15); and

- Houston Methodist The Woodlands Hospital's first set of interrogatories, requests for production and requests for admission, (Docket Entry No. 23-16).

Olicia submitted the following responsive evidence:

- Amanda Olicia's declaration, (Docket Entry No. 29-1);

- Tricia Clark's declaration, (Docket Entry No. 29-2);

- Anita Evans's declaration, (Docket Entry No. 29-3);

- an excerpt from James Indiero's deposition, (Docket Entry No. 29-4);

- an excerpt from Houston Methodist's confidentiality policy statement, (Docket Entry No. 29-5);

- an excerpt from Olicia's employment performance reviews in 2017, (Docket Entry No. 29-6);

- an Employee of the Month nomination ballot, (Docket Entry No. 29-7);

- patient appreciation notes about Olicia and manager evaluation for Olicia, (Docket Entry No. 29-8);

- a journal entry, (Docket Entry No. 29-9);

- text messages between Olicia and Cynthia Cardoso and email exchange between Olicia and William Schedule (Docket Entry No. 29-10);

- an email exchange between Armen Kocharian and Tricia Clark, (Docket Entry No. 29-11);

- an email exchange between Carole Hackett and Tricia Clark, (Docket Entry No. 29-12);

- a letter from Olicia, without a recipient listed, describing her experiences at Houston Methodist The Woodlands (Docket Entry No. 29-13);

- the Methodist Hospital System Employee Handbook Acknowledgment Receipt, (Docket Entry No. 29-14);

- an email exchange between Kendra Lee-Martin and Olicia, (Docket Entry No. 29-15);

- the Methodist MRI Tech II Job Advertisement, (Docket Entry No. 29-16);

- a Personal Screening Policy Statement, (Docket Entry No. 29-17);

- a System Quality and Pt. Safety Policy Statement, (Docket Entry No. 29-18);

- an email exchange between Armen Kocharian and Anita Evans, (Docket Entry No. 29-19);

- an email exchange between Olicia and Carole Hackett, (Docket Entry No. 29-20);

- an email exchange between Marc Boom, Debra Sukin, and Carol Hackett, (Docket Entry No. 29-21);

- an email exchange between Carole Hackett and Debra Hughes, (Docket Entry No. 29-22);

- an email exchange between Debby Hughes and Kerrie Guerrero, (Docket Entry No. 29-23);

- an email exchange between Armen Kocharian and Dominique Wilson, (Docket Entry No. 29-24);

- an email exchange between Dominique Wilson, James Indiero, Trent Fulin, and Debra Hughes, (Docket Entry No. 29-25);

- the Disciplinary Action Guidelines for Confidentiality Information Violations Guidelines, (Docket Entry No. 29-26);

- the Methodist Hospital Employee Handbook Acknowledgment Receipt, (Docket Entry No. 29-27);

- the Confidentiality and Information Security Agreement, (Docket Entry No. 29-28);

- the Department Safety Orientation Checklist, (Docket Entry No. 29-29);

- Amanda Kalmbach's Performance Evaluation and Appraisal Form, (Docket Entry No. 29-30);

- Olicia's Timecard Report for Pay Period 16, (Docket Entry No. 29-31);

- an email exchange between Dominique Wilson and Olicia, (Docket Entry No. 29-32);

- the Houston Methodist Policy and Procedure for Reporting MR Safety Events, (Docket Entry No. 29-33);

- the Houston Methodist Policy Statement for MRI practices, (Docket Entry No. 29-34);

- the Houston Methodist Policy Statement for the MR Medical Director, (Docket Entry No. 29-35);

- the Houston Methodist MR Guidelines to Prevent Excessive Heating and Burns, (Docket Entry No. 29-36);

- the Houston Methodist Policy and Procedure for Contrast Administration, (Docket Entry No. 29-37);

- the Houston Methodist Policy and Procedure for Hearing Protection for Patients/Persons in MR Scan Room, (Docket Entry No. 29-38);

- the Houston Methodist Policy and Procedure for Contrast Administration, (Docket Entry No. 29-39);

- the Houston Methodist Policy and Procedure for Reporting MR Safety Events, (Docket Entry No. 29-40);

- the Houston Methodist Policy and Procedure for Emergency Procedure – MRI Zone II through IV, (Docket Entry No. 29-41);

- the Houston Methodist Policy and Procedure for MRI of Patients with Cardiovascular Implanted Electronic Devices, (Docket Entry No. 29-42);

- Sprint Call Details Log, dated July 26 – August 25, 2019, (Docket Entry No. 29-43);

- a text exchange between Dr. Kocheran and Olicia, dated April 2019, (Docket Entry No. 29-44);

- a text exchange between Dr. Kocheran and Olicia, dated February 2020, (Docket Entry No. 29-45);

- a text exchange between Dr. Kocheran and Olicia, dated February 27, 2020, and March 2, 2020, (Docket Entry No. 29-46);

- a text exchange between Dr. Kocheran and Olicia, dated March 5, 2020, and March 9, 2020 (Docket Entry No. 29-47);

- a text exchange between Dr. Kocheran and Olicia, dated March 12, 2020, (Docket Entry No. 29-48);

- a text exchange between Dr. Kocheran and Olicia, dated March 22, 2020, and March 26, 2020, (Docket Entry No. 29-49);

- a text exchange between Dr. Kocheran and Olicia, dated June 23, 2020, June 25, 2020, and June 29, 2020, (Docket Entry No. 29-50);

- a text exchange between Dr. Kocheran and Olicia, July 6, 2020, July 22, 2020, and July 23, 2020, (Docket Entry No. 29-51);

- a text exchange between Dr. Kocheran and Olicia, dated July 28, 2020, (Docket Entry No. 29-52);

- a text exchange between Dr. Kocheran and Olicia, dated September 25, 2020, and September 31, 2020, (Docket Entry No. 29-53);

- a text exchange between Rhonda Smith and Olicia, dated May 27, 2020, June 4, 2020, June 5, 2020, June 8, 2020, June 10, 2020 (Docket Entry No. 29-54);

- a text exchange between Anita Evans and Olicia, dated April 24, 2019, and April 25, 2019, (Docket Entry No. 29-55);

- a text exchange between Anita Evans and Olicia, dated May 11, 2019, (Docket Entry No. 29-56);

- a text exchange between Anita Evans and Olicia, dated May 24, 2019, (Docket Entry No. 29-57);

- a text exchange between Anita Evans and Olicia, dated July 21, 2019, and July 23, 2019, (Docket Entry No. 29-58);

- an undated text exchange between Anita Evans and Olicia, (Docket Entry No. 29-59);

- an undated text exchange between Anita Evans and Olicia, (Docket Entry No. 29-60);

- a text exchange between Anita Evans and Olicia, dated February 9, 2020, (Docket Entry No. 29-61);

- a text exchange between Anita Evans and Olicia, dated March 18, 2020, (Docket Entry No. 29-62);

- a text exchange between Anita Evans and Olicia, dated March 19, 2020, (Docket Entry No. 29-63);

- a text exchange between Anita Evans and Olicia, dated May 27, 2020, (Docket Entry No. 29-64);

- the Houston Methodist Business Practices and Ethics Line Information, (Docket Entry No. 29-65); and

- the Houston Methodist Non-Retaliation Policy and Vendor and Contractor Resources, (Docket Entry No. 29-66).

Houston Methodist submitted an extensive list of objections to Olicia's summary judgment evidence.  (Docket Entry No. 30).  Houston Methodist provided only the relevant Federal Rules of Evidence, but did not provide any argument to support the objections.  Many of these objections are inapt at the summary judgment phase. *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all

duplicative of the summary judgment standard itself").  "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . , the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (alteration in original) (quoting 11 MOORE'S FEDERAL PRACTICE-CIVIL  ¶ 56.91 (2017))).

Whether the objected to evidence is considered or given little or full weight, the objections are moot because they do not affect the court's analysis or conclusion.

## III.    Analysis

### A.    Whether Houston Methodist was Olicia's Employer

The defendants argue that Houston Methodist is entitled to summary judgment on all claims because Olicia was employed by Houston Methodist The Woodlands, a separate entity from Houston Methodist.  Although Title VII does not require a direct employment relationship between the parties, Olicia can bring a claim against Houston Methodist if she can show that Houston Methodist is an employer within the meaning of Title VII and "us[ed] its position of power and control, adversely and wrongfully interfered with the plaintiff's employment relationship with a third party." *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 147 (Tex. 1999).  The Texas Labor Code similarly requires showing: "(1) that the defendant is an employer within the statutory definition of the Act; (2) that some sort of employment relationship exists between the plaintiff and a third party; and (3) that the defendant controlled access to the plaintiff's employment opportunities and denied or interfered with that access based on unlawful criteria."  *Id.* at 147 (citations omitted).  In determining whether two entities serve are single employer for purposes of Title VII, a court considers the "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Vance v.*

*Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002) (quoting *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 927 (5th Cir.)).  Under the Family Medical Leave Act, an "eligible employee" must have been employed "for at least 12 months by the employer with respect to whom leave is requested." 29 U.S.C. § 2611(2)(A).

Olicia responds that Methodist Hospital as well as Houston Methodist The Woodlands Hospital acted as her employer.  The Employee Handbook Acknowledgement she signed is labeled the "Methodist Hospital System Employee Handbook" and sets out the "policies, procedures and benefits of The Methodist Hospital System." (Docket Entry No. 23-4).  The heading of the confidentiality agreement she signed is "The Methodist Hospital System," and the agreement addresses "work or association with The Methodist Hospital (Methodist)." (Docket Entry No. 23-5).  The safety policies that she complained were not being followed were set by the MRI Safety Council, which is composed of physicians, radiologists, and technologists for the entire Methodist Hospital system.  (Docket Entry No. 29-4).  Olicia received a Five-Year employee award after transferring to the Methodist Hospital Woodlands from the Methodist Hospital Willowbrook.  The patient confidentiality policy that Olicia allegedly violated applies to 15 different Methodist Hospital locations.  (Docket Entry No. 29-5).  The body of the EEOC charge identifies Olicia's employer as "the Woodlands location of The Methodist Hospital."  (Docket Entry No. 23-1).

Olicia has at least shown a factual dispute material to whether Methodist Hospital acted as one of her employers.  A number of documents refer to The Methodist Hospital, either in addition to or instead of the Woodlands Hospital, as her employer.  The policies she allegedly violated are those of the Methodist Hospital.  The record is sufficient, for the purposes of summary judgment, to treat both entities as her employer.

14

Methodist argues that the court lacks jurisdiction to consider the Title VII and Texas Labor Code claims against Houston Methodist because Olicia's EEOC Charge of Discrimination named only Houston Methodist The Woodlands as her employer.  "Title VII's charge-filing requirement is not of jurisdictional cast."  *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1850 (2019).  The charge referred to both the Woodlands location of the Methodist Hospital and to Houston Methodist The Woodlands Hospital as Olicia's employer.  The court will review the Title VII and Texas Labor Code claims against Houston Methodist, and will refer to Houston Methodist and Houston Methodist The Woodlands together as "Methodist."

### B.      The Motion to Withdraw the Deemed Admissions

Olicia failed to timely respond to the first set of requests for admission, which Methodist relies on in its motion for summary judgment.  Olicia moved to withdraw the deemed admissions under Rule 36(b).  (Docket Entry No. 32).

"A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  Fed R. Civ. P. 36(a)(3).  "[T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  Fed R. Civ. P. 36(b).

Olicia argues that she inadvertently failed to respond to the requests for admission, but she did respond to the requests for production and the interrogatories.  She blames Methodist for not notifying her of her own failure to respond until Methodist relied on the admissions in moving for summary judgment.  Olicia discovered the error when the motion was filed and promptly served her objections and responses.

The presentation of this case on the merits would be served by allowing Olicia to withdraw the deemed admissions and file objections and responses.  The requests are for admissions on facts and legal issues that "go to the very heart of the merits" of the case.  *Aguirre v. Asti Home Care, LLC*, No. EP-18-CV-149-KC, 2019 WL 12536902, at *2 (W.D. Tex. Apr. 25, 2019) (citation omitted).  For example, the admissions include "You have never been employed by The Methodist Hospital d/b/a Houston Methodist Hospital," "You did not dispute the reasons for [y]our termination with Defendant," "You did not report or complain [that you] were subjected to any discrimination on the basis of Your sex or gender prior to Your termination from Defendant." (Docket Entry No. 23-16 at 26–27).  Denying leave to withdraw or amend the unanswered—and therefore deemed—admissions amounts to a decision on the merits, with no opportunity to present the evidence or law on the merits.  Withdrawing the deemed admissions promotes the presentation of the merits, meeting the first prong of Rule 36(b).

The second prong of Rule 36(b) is whether Methodist will suffer unfair prejudice if it cannot rely on deeming the admissions.  Olicia promptly responded after she discovered the mistake.  *Cf. Am. Auto. Assn v. AAA Legal Clinic of Jefferson Crooke, P.C.,* 930 F.2d 1117, 2210 (5th Cir. 1991) (a plaintiff was prejudiced when the district court on its own deemed admissions withdrawn and ignored others at trial because the plaintiff relied on the admissions and had no opportunity to develop and present contrary evidence at trial).  Methodist deposed Olicia and has ample sources of summary judgment evidence besides deemed admissions.  As a result, allowing Olicia to withdraw the deemed admissions does not risk unfair prejudice.

The court grants Olicia's motion for leave to withdraw deemed admissions and to respond to the defendants' first requests for admissions, (Docket Entry No. 32).

### C.  The § 161.134 of the Texas Health and Safety Code Claims

Olicia alleges that Methodist violated § 161.134 of the Texas Health and Safety Code by firing her 12 days after she reported Stacey Moye, a nurse practitioner, for a safety violation on August 14, 2020.  She argues that she reported Moye for not completing the MRI Safety Questionnaire before scanning patients on August 6, 2020, and August 14, 2020.  (Docket Entry No. 29 at 6).  She also notes that she made two calls to the Ethics Hotline in July 2019, and that she "reported conduct that directly endangered patients who were going to be subjected to the powerful magnetic field of the MRI machine."  (Docket Entry No. 29 at 10–11).  She additionally argues that "[a]fter transferring to the Woodlands location in 2019, [she] made reports of 'patient safety violations to the Ethics Hotline, Human Resources, her supervisor Rhonda Smith, her manager Dominque Wilson, director James Inderio, and Carole Hackett, who was the Vice President of Human Resources for the Methodist System.'"  (Docket Entry No. 29 at 6).

In her deposition, Olicia testified to seven different instances of safety violations, some of which she reported, which she believed caused Methodist to retaliate against her.  The first two were reports to her director, James Indiero, that the lead MRI Lead Technologist, Jeff Noormohammed, misrepresented that a patient with a spinal cord stimulator was safe to scan, (Docket Entry No. 23-15 at 21), and that Noormohammed brought a patient with a pacemaker for a scan who was not alert to consent to the scan.  (Docket Entry No. 23-15 at 21).

Olicia argues that her third report was when she told the Senior Imaging Physicist at Houston Methodist, Dr. Armen Kocharian, that Noormohammed lied to her and said that he had approval to scan a patient with a stimulator, (Docket Entry No. 23-15 at 21).  Noormohammed was fired following Olicia's complaints.  (Docket Entry No. 23-15 at 24).

Olicia explained that her fourth report was to Rhonda Smith, her supervisor and the MRI Lead Technologist hired after Mr. Noormohammed was fired, when she corrected Smith on the process for clearing patient implants for scanning, (Docket Entry No. 23-15 at 26–27).  The fifth report was when Olicia told Smith that Cynthia Cardoso, an MRI Technologist, erroneously brought a patient with hearing aids into the scan room without removing the aids, (Docket Entry No. 23-15 at 22).

The sixth incident was based on Cardoso, an MRI Technologist, giving "contrast to a patient without a physician order."  (Docket Entry No. 23-15 at 22).  Although Olicia testified that all of these violations "were documented in one way or another," she also testified that she did not report Cardoso giving contrast without an order to anyone because she thought another person was going to report it.  (Docket Entry No. 23-15 at 22, 29).

Olicia's seventh incident was that Smith "brought a pacemaker patient down that was not alert and oriented."  (Docket Entry No. 23-15 at 22).  Olicia could not remember if she reported this incident to anyone.  (Docket Entry No. 23-15 at 33).

"The elements of a cause of action under section 161.134 are (1) an employee of a hospital, mental health, facility, or treatment facility, (2) reported a violation of law, (3) to a supervisor, administrator, state regulatory agency, or a law enforcement agency, (4) in good faith, and (5) as a result, the employee was suspended, terminated, disciplined or otherwise discriminated against." *Word v. Wilson N. Jones Reg'l Health Sys.*, 2007 WL 2421500, at *3 (Tex. App.—Dallas Aug. 28, 2007, no pet.).  Methodist argues that Olicia cannot show that she reported a "violation of law in good faith to a supervisor or administrator of either Houston Methodist or Houston Methodist The Woodlands."  (Docket Entry No. 23 at 15).  Methodist points to Olicia's testimony that she was fired for reporting safety violations, not law violations.  (Docket Entry No. 23 at 15).

Other than Olicia reporting Noormohammed's conduct to Kocharian and Inderio—for which he was fired—and reporting Cynthia Cardoso to Rhonda Smith, the reports consist of Olicia correcting her colleagues work or witnessing shortcuts, but not reporting them to "to a supervisor, administrator, state regulatory agency, or a law enforcement agency." *See* § 161.134(a). Even if some of the seven incidents are reports, they are not good-faith reports of a law violation because Olicia testified that she did not know of any law that her colleagues violated. Olicia responds that she does not have to cite a particular statute, and that her belief that others directly endangered MRI patients is sufficient to show that she "reasonably believes or . . . knows of information that would reasonably cause a person to believe that the . . . conduct . . . is or might be illegal." (Docket Entry No. 29 at 10 (citing *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 418 (Tex. 2017)). While Olicia does not need to show that "the reported conduct in fact violated the law," she must show that she had "a good-faith belief that the conduct violates the law." *Murphy*, 518 S.W.3d at 419.

Olicia testified that she was wrongfully terminated for reporting violations of Methodist safety policies related to preparing patients for MRIs. She could not think of any law that the staff members violated, noting that she is "not educated in law." (Docket Entry No. 23-15 at 24). She suggested that there could be negligence if a patient was injured as a result of the shortcuts she reported other MRI technologists were taking in preparing patients for the MRIs. (Docket Entry No. 23-15 at 24, 27).

Olicia has shown that she was very concerned that other MRI technologists were taking shortcuts in preparing patients for MRIs, violating Methodist safety policies, and that a patient might be harmed as a result. But she has not shown that she reported any conduct that she believed violated any law. In *Murphy*, the plaintiff "testified that she subjectively believed that [a person]

did not obtain the patient's informed consent as the law requires."  518 S.W.3d at 419.  The court concluded that this was sufficient to show a subjective good-faith belief that the other person had violated the law.  Olicia's testimony does not show that she ever believed that the shortcuts in patient preparation amounted to a law violation.  She has failed to point to evidence supporting an inference of a belief that there were violations of law.

The same is true for Olicia's concern about Stacey Moye "rushing" patients through MRIs without proper documentation, which Olicia relies on in her response.  In the declaration attached to her response to the motion for summary judgment, Olicia argues that she "reasonably believed the ongoing violations were illegal."  (Docket Entry No. 29-1 at 7).  This statement does not refer to a law, or the even the type of law, that Moye's conduct could have violated.  Olicia claims that she "documented the safety violation involving Stacy Moye," but not that she reported it to "a supervisor, administrator, state regulatory agency, or a law enforcement agency," as required by § 161.134.  She has not explained how the report to the ethics hotline is a report to "a supervisor, administrator, state regulatory agency, or a law enforcement agency" under § 161.134.

Olicia cites to her cell-phone log listing two toll-free calls on July 26, 2019, more than a year before she was fired in August 2020; text message exchanges with Kocharian, the Senior Imaging Physicist, describing safety concerns; and text messages with Anita Evans, another technologist, about the ethics hotline.  (Docket Entry Nos. 29-43, 29-50, 29-58, 29-59).  This evidence does not support an inference that Olicia reported the safety violations she observed "to a supervisor, administrator, state regulatory agency, or a law enforcement agency," with a good faith belief that they were violations of law.  Her argument that she on several occasions reported "conduct that directly endangered patients" lacks sufficient detail to constitute a report under § 161.134.

Olicia has not shown that there is a triable issue as to whether she filed reports under § 161.134.  This claim is dismissed.

### D.     The Family and Medical Leave Act Interference Claim

To make a prima facie showing of FMLA interference, a plaintiff must show that: "(1) [she] was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [she] was entitled to leave; (4) [she] gave proper notice of his intention to take FMLA leave; and (5) [her] employer denied [her] the benefits to which [she] was entitled under the FMLA."  *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

Methodist argues that Olicia cannot show Family Medical Leave Act interference because Olicia failed to submit the medical certification required to establish entitlement to benefits under the Act.  29 U.S.C. § 2613.  Olicia responds that she needed to see her son's doctor to fill out the paperwork, because the leave she sought was to care for her son.  (Docket Entry No. 29 at 4).  She argues that Methodist prevented her from completing her certification by changing her work schedule, so she could not see her son's doctor.  (Docket Entry No. 29 at 4).  She argues that this creates a factual dispute as to whether Methodist interfered with her rights by not permitting her to complete the certification.

Olicia relies on an email exchange with Dominique Wilson, the radiology manager, in which Wilson notified Olicia that her request for leave had been received and was "pending determination," and that Wilson would send an update to Olicia after Wilson received approval. (Docket Entry No. 29-32).  Olicia responded, "I did not respond to the meeting request because I was not at work when it was sent.  I also do not have potential relief from the scanner until 12:30 p.m. per Rhonda's schedule."  (Docket Entry No. 29-32).  The email does not indicate that the requested meeting was related to Olicia's request for leave.  This oblique reference to a scheduling problem does not state that the schedule was preventing her from completing the Family Medical

Leave Act paperwork.  Olicia testified that she "began the process of trying to file for FMLA" leave but was "unable to complete the process."  (Docket Entry No. 23-15 at 47).  She testified that she was unable to complete the process because one of her son's physicians asked her to make an appointment to fill out the Family Medical Leave Act paperwork, but she had to cancel the appointment because her work schedule was changed.  (Docket Entry No. 23-15 at 47).  She explained that she had to wait two months to receive another appointment, so she was not able to fill out the Family Medical Leave Act paperwork.  (Docket Entry No. 23-15 at 47).

Olicia's argument that she had difficulty getting a doctor's appointment to fill out her Family Medical Leave Act paperwork because of her work schedule is insufficient to raise an inference that Methodist was responsible for her failure to obtain the medical certification and to excuse the requirement.  Olicia has not presented or pointed to evidence showing that she even notified Methodist that she was having difficulty scheduling a doctor's appointment for her medical certification.  She has not presented or pointed to evidence that she told Methodist of the problem or asked for a scheduled opportunity to visit her son's doctor.  Without a medical certification establishing entitlement to Family and Medical Leave Act leave, Olicia cannot establish a prima facie case of Family and Medical Leave Act interference.  *Comeaux-Bisor v. YMCA of Greater Houston*, 290 F. App's 722, 725 (5th Cir. 2008) ("[The plaintiff] never provided the YMCA with medical evidence indicating that she was medically unable to perform her employment duties as required under [the Family and Medical Leave Act]. . . .  [she] failed to submit the requisite certification establishing she suffered from a "serious health condition," [so] she cannot prevail on her claim under the [Family and Medical Leave Act].").

### E.    The Sex Discrimination Claims

Olicia brings claims for sex discrimination under Title VII and the Texas Labor Code,

§ 21.001, *et seq.*   The Texas Commission on Human Rights Act prohibits discrimination in employment based on "race, color, disability, religion, sex, national origin, or age."   Tex. Labor Code 21.051.   Under Title VII, an employer cannot "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's [sex.]"   42 U.S.C. § 2000e–2(a)(1). "An employee can prove discrimination through direct or circumstantial evidence." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994)).   The Texas Labor Code, § 21.001, *et seq.* "was expressly enacted to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments.' . . . Because '[t]he Legislature intended to correlate state law with federal law in employment discrimination cases,' we turn to analogous federal case law for guidance."   *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005).

A plaintiff may rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis.   To state a prima facie case, the plaintiff must show that she (1) is a member of a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside the protected class or, in the case of disparate treatment, show that others similarly situated were treated more favorably.   *Bouie v. Equistar Chems. LP*, 188 F. App'x 233, 236–37 (5th Cir. 2006); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).

If a plaintiff makes a prima facie showing, the burden shifts to the employer to show it had a legitimate, nondiscriminatory reason for the adverse employment action.   *See McDonnell Douglas*, 411 U.S. at 802.   If the employer can show a legitimate, nondiscriminatory reason, the presumption of discrimination disappears, and the burden shifts back to the employee to show that

the proffered reason was a pretext for discrimination or that the employee's protected status is another motivating factor for the decision.  *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 736–37 (S.D. Tex. 2014).

Methodist does not dispute that Olicia was a member of a protected class, that she was qualified for her position or that she suffered an adverse employment action.  The issue is whether Olicia has made a prima facie case that "others similarly situated were treated more favorably." *See Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021).  To be considered similarly situated, employees must be in "nearly identical circumstances."  *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)); s*ee also Skinner v. Brown*, 951 F. Supp. 1307, 1315 (S.D. Tex. 1996) (no *prima facie* case because the plaintiff "failed to present any competent summary judgment evidence that others [outside protected class] received more favorable treatment under similar circumstances").   "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee*, 574 F.3d at 260.

Olicia testified that her director, Indiero, referred to her and other female employees as "you girls," and asked her, "why do you have to be so emotional?"  (Docket Entry No. 23-15 at 43).  She cites to text messages with Anita Evans from May 2019 and April 2020 in which they discussed meeting with "just us girls" about their disagreements with the MRI safety processes. (Docket Entry No. 29-16, 29-56, 29-62).

Olicia argues that other, male, employees stored patient information on their personal cell phones, made complaints to management, and committed safety violations, but were not fired.

(Docket Entry No. 29 at 12).  But she testified at her deposition that she was unaware of a male MRI Technologist who recorded and sent patient Protected Health Information from his personal e-mail account to his work e-mail account but who was not terminated.  (Docket Entry No. 23-15 at 45).  She also alleges that Methodist replaced her with a male employee, who had a different title but the same responsibilities.  (Docket Entry No. 29 at 8).  Methodist responds that the male employee holds a different position than Olicia did.  And Olicia has not pointed to any evidence that the male employee violated Methodist rules or policies and received less harsh treatment.  She made no allegations, let alone pointed to evidence, of coworkers in nearly identical circumstances who were treated differently.

Olicia alleges that Anita Evans was also fired after making reports about safety violations, and that Tricia Clark and Yesenia Trejo quit out of fear of termination.  (Docket Entry No. 29-1).  She provided declarations from Evans and Clark stating that they each feared retaliation based on speaking out about safety issues, and that other employees committed safety policy violations but were not disciplined.  (Docket Entry Nos. 29-2, 29-3).  But again, the record is devoid of examples of employees who committed the same policy violations as Olicia and were treated differently.  Olicia has not pointed to evidence of similarly situated employees outside her protected class who received more favorable treatment under similar circumstances.

Methodist has proffered legitimate, nondiscriminatory reasons for firing Olicia, and she has not raised a factual dispute material to determining whether the reasons were pretextual.  Olicia was fired for the stated reasons of taking a picture with a patient's Protected Health Information, sending it from an unsecured, personal email account to her work account, and lying about it during the investigation.  The documents of Olicia's termination, dated August 26, 2020, explain that Olicia was fired for "taking a picture with her cell phone of an MRI Safety Screening form that

contained patient information," then telling "leadership" that she needed the photograph for "reference," that it did not contain patient information, and that she only sent it from her work email account to her work email account. (Docket Entry No. 23-8 at 2). The report of Methodist's investigation explained that Olicia's actions required the hospital to disclose to the patient that his or her protected health information had been compromised. (Docket Entry No. 23-8 at 2). An investigation concluded that Olicia's actions were "a blatant disregard for the patient's privacy and security" of health information, and in violation of the confidentiality and Information Security Agreement. (Docket Entry No. 23-8 at 2). The report also explains that Olicia provided false information during the internal investigation, which violated the Managing for Performance policy. (Docket Entry No. 23-8 at 2). The report concluded that Olicia violated the ICARE— Integrity, Compassion, Accountability, Respect, and Excellence—values. (Docket Entry No. 23-8 at 2). The defendants have shown legitimate, nondiscriminatory reasons for firing her.

Olicia argues that the reasons are pretextual because Houston Methodist did not fully investigate the incident that led to her firing or address to her satisfaction the complaints about safety that she raised. "Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones." *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *Id.* Olicia argues that the outcome of the investigation was incorrect. This is insufficient to create a material factual dispute as to pretext. *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("evidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision.").

### F. The Harassment and Hostile Work Environment Claims

"To prove sexual harassment based on a hostile work environment, the plaintiff must show (1) she was subjected to unwelcome sexual harassment, (2) she was harassed because of her sex, (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile work environment, and (4) some basis for holding the employer liable."  *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018).  *See also Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (reciting the elements under Title VII).

Olicia alleges that James Indiero, her director, subjected her to a hostile work environment by telling her that her peers disliked her and complained about her, telling her that her scrub color was in violation of policy, and referring to her and other female MRI technicians as "you girls." (Docket Entry No. 15 at 5; Docket Entry No. 23-15 at 15).  She alleges that Dominique Wilson, her manager, subjected her to a hostile work environment by telling her that her scrub color was in violation of policy, calling her "difficult," and changing her work schedule.  (Docket Entry No. 23-15 at 15).

"To affect a term, condition, or privilege of employment, the harassing conduct 'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (quoting *Aryain v. Wal–Mart Stores of Tex.*, L.P., 534 F.3d 473, 479 (5th Cir.2008)).  The Fifth Circuit applies "an objective 'reasonable person' standard to evaluate severity and pervasiveness."  *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).  "Ultimately, whether an environment is hostile or abusive depends on the totality of circumstances."  *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993))

Olicia's allegations and evidence fall far short of harassment.  She has not pointed to evidence raising a factual dispute material to determining whether the comments about her scrub

color were based on her sex.   And she has not shown that the alleged occasional sexist comments, based on the reasonable person standard, altered the conditions of her employment or created an abusive working environment.

### G.    The Retaliation Claims under Title VII and the Texas Labor Code

Title VII makes it unlawful for an employer to retaliate against an employee who opposes an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e–3(a).  Under both Title VII and the Texas Labor Code, to make a prima facie showing of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action.  *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."  *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). "Title VII does not protect opposition to all forms of unscrupulous conduct."  *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010).  "Title VII protects only opposition to discrimination based on 'race, color, religion, sex, or national origin.'" *Id.* (quoting 42 U.S.C. § 2000e–2(a)(1)).  The Fifth Circuit has explained that when a person is singled out not because of a protected status, but because of filing a grievance related to work hours, Title VII is not implicated.  *Brown*, 406 F. App'x at 840 ("Title VII did not prohibit UPS from terminating [] because he complained about unfair work distribution and unpaid overtime.").

Olicia alleges that she was retaliated against for complaining about general unfair treatment, but she could not recall whether she complained about being treated unfairly because of her sex.  (Docket Entry No. 23-15 at 46).  The Fifth Circuit has "consistently held that a vague

complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011).

Additionally, for a Title VII retaliation claim, a plaintiff must show that the protected activity was a "but-for" cause of the adverse action, rather than a "motivating factor" as is required for a Title VII discrimination claim. *Wantou v. Wal-Mart Stores Texas, L.L.C.*, No. 20-40284, 2022 WL 92810, at *7 (5th Cir. Jan. 10, 2022). "[N]o liability for unlawful retaliation arises if the employee would have faced that discipline even without the protected conduct." *Id.* Even if Olicia's complaints constitute protected activity, she has not pointed to evidence showing a causal connection between her reports and her firing, let alone that her reports were the or a "but-for" cause of her firing.

## IV.    Conclusion

Olicia's motion to withdraw the deemed admissions, (Docket Entry No. 32), is granted. Methodist's motion for summary judgment is granted.  (Docket Entry No. 23).

SIGNED on January 24, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge