United States District Court
Southern District of Texas
**ENTERED**
July 06, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMANDA OLICIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-21-1184 |
| | § | |
| THE METHODIST HOSPITAL D/B/A | § | |
| THE METHODIST HOSPITAL SYSTEM, | § | |
| HOUSTON METHODIST | § | |
| THE WOODLANDS HOSPITAL | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Amanda Olicia, an MRI technician, sued her former employer, Methodist Hospital, for violations of § 161.134 of the Texas Health and Safety Code, the Texas Commission on Human Rights Act, Title VII of the Civil Rights Act of 1964, and the Family Medical Leave Act, alleging discrimination based on sex, retaliation for complaining of safety policy violations, and interference with the leave she requested under the Family Medical Leave Act. The court heard oral argument on the defendant's motion for summary judgment and granted the motion. (Docket Entry No. 42). Olicia now moves for reconsideration of that decision, arguing that the court made errors of law and fact and that evidence not previously available shows that her termination was pretextual and retaliatory.

Based on the motion and response; the applicable law; the summary judgment record; and the parties' briefs, the motion for reconsideration, (Docket Entry No. 44), is denied.

The reasons are explained below.

I.  **The Legal Standard**

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Washington ex rel. J.W. v. Katy Indep. Sch. Dist.*, 403 F. Supp. 3d 610, 616 (S.D. Tex. 2019) (citing *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997)).  "A motion asking the court to reconsider a prior ruling is evaluated" as a motion to alter or amend a judgment under Rule 59 if it is filed within 28 days of the entry of judgment. *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012).  If the motion is filed after that time, it is analyzed as a motion for relief from a final judgment or order under Rule 60.  *Id.*  Olicia filed her motion within the 28-day window, so it is considered a Rule 59(e) motion.

"A Rule 59(e) motion calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (quotation marks omitted).  A Rule 59(e) motion "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).  "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citation omitted).  "The Rule 59(e) standard favors the denial of motions to alter or amend a judgment." *Willbern v. Bayview Loan Servicing, LLC*, No. 20-20129, 2021 WL 126419, at *3 (5th Cir. Jan. 13, 2021) (citing *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993)). A party seeking reconsideration must satisfy "at least one of" the following criteria: "(1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary . . . to

prevent manifest injustice; and (4) the motion is justified by an intervening change in the controlling law." *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, 305 F. Supp. 3d711, 717–18 (E.D. La. 2018) (citations omitted).

## II.     Analysis

Olicia argues that the court erred as a matter of fact and law in concluding that she did not report law violations to her supervisors, as required for a claim under § 161.134 of the Texas Health and Safety Code. She argues that when she reported that another MRI technician was failing to properly prepare patient documentation for MRIs, she was reporting both a safety violation and a violation of law.

"The elements of a cause of action under section 161.134 are (1) an employee of a hospital, mental health, facility, or treatment facility, (2) reported a violation of law, (3) to a supervisor, administrator, state regulatory agency, or a law enforcement agency, (4) in good faith, and (5) as a result, the employee was suspended, terminated, disciplined or otherwise discriminated against." *Word v. Wilson N. Jones Reg'l Health Sys.*, 2007 WL 2421500, at *3 (Tex. App.—Dallas Aug. 28, 2007, no pet.). "'Good faith' means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience." *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 419 (Tex. 2017). The Supreme Court of Texas looks to court interpretations of "good faith" under the Texas Whistleblower Act to interpret the meaning of good faith. *See id.* (citing *Wichita Cnty., Tex. v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996) for the definition of good-faith belief in § 161.135). The first element is subjective as to the employee's belief and the second element is objective as to a reasonable person. *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002). Section

161.134 defines law as "including a violation of this chapter, a rule adopted under this chapter, or a rule of another agency." Tex. Health & Safety Code Ann. § 161.134.

Olicia reported to her supervisor, Rhonda Smith, that another MRI technician, Stacey Moye, was failing to properly complete MRI patient preparation forms by omitting some parts of some patients' medical history and by signing her own name for the patients' signatures. Olicia argues that she made a good-faith report of a law violation, and that she was fired in retaliation for her report and for complaints about Moye's work. Methodist's stated reason for firing Olicia was for an act she admitted—using her cell phone to photograph a patient's medical information and using her personal email account to send the photograph to herself. This conduct admittedly violated Methodist's patient privacy rules. Olicia testified that she did take the picture and emailed it to herself, but justified her rule violations by her intent to use the picture to show the Methodist MRI supervisors what Moye was doing incorrectly in filling out MRI patient preparation forms. (Docket Entry No. 44 at 5).

Olicia's deposition included testimony that she believed that she was terminated for reporting violations of Methodist's internal requirements for technicians preparing patients for MRIs. Olicia testified that she knew of no law that she believed Moye or other staff members violated, except to point to the possibility that if a patient was injured as a result of a failure to fill out the pre-MRI preparation form correctly, that patient might be able to sue for negligence. (Docket Entry No. 23-15 at 24, 26, 27). When Olicia was asked if she was reporting a violation of law or hospital policy, she testified that "the idea behind that safety is that, you know, there's a process. And it's not my job to think outside of the process that's in place that's been put in place by a physician to follow that process. Because at the end of the day, it's patient safety. I can't speak to law about that . . . . But I can tell you that things happen to patients when safety procedures

4

are not followed." (Docket Entry No. 23-15 at 14). She repeatedly testified that she did not know of any law that she believed was violated, but that she was was concerned that her coworker was not following the internal Methodist requirements for MRI patient preparation paperwork. (Docket Entry No. 23-15 at 24, 26, 27). Her pleadings and testimony make clear that she is relying on whistleblower protection in her lawsuit. (Docket Entry No. 15 at 8–9; Docket Entry No. 25-15 at 10).

"There is no requirement that an employee identify a specific law when making a report." *Llanes v. Corpus Christi Indep. Sch. Dist.,* 64 S.W.3d 638, 642 (Tex. App.—Corpus Christi 2001, pet. denied). "Nor does an employee need to establish an actual violation of law. But there must be some law prohibiting the complained-of conduct to give rise to a whistleblower claim." *Texas Dep't of Crim. Just. v. McElyea*, 239 S.W.3d 842, 850 (Tex. App. 2007) (internal citation omitted). "[W]hen an employee believes and reports in good faith that a violation has occurred, but is wrong about the legal effect of the facts, [s]he is nevertheless protected by the whistleblower statute." *Id.* "[A]n employee must have a good-faith belief that a law, which in fact exists, was violated." *Llanes*, 64 S.W.3d at 643.

The facts here are unusual in that Olicia did not believe that she was reporting a violation of law. She testified that she did believe that she was reporting violations of Methodist's internal policies for MRI patient preparation, specifically relating to the documentation of the patient MRI preparation steps. (Docket Entry No. 25-15 at 10–12). "The test's first element—the "honesty in fact" element—ensures that a public employee seeking a whistleblower-statute remedy believed that he was reporting an actual violation of law." *Texas Dep't of Crim. Just. v. McElyea*, 239 S.W.3d 842, 850 (Tex. App. 2007). Texas courts have explained that when an employee believes only that she is reporting a violation of an internal department policy, that employee has no good-

5

faith belief that she is reporting a violation of law. In *Donlevy v. City of The Colony*, the court explained that the plaintiff did not hold a good faith belief of a violation of law because she "openly admitted at her deposition" that she did not know at the time of her report or at the time of the deposition what law she believed the defendant had violated. 8 S.W.3d 754, 758 (Tex. App.—Fort Worth 1999, no pet.). In *Grabowski*, the Texas Supreme Court came to the same conclusion. Grabowski alleged that he was terminated for reporting internal department policies, and in his deposition "openly admitted that he could think of no . . . law violated" and could cite only to deviations from internal department policies. *Harris Cnty. Precinct Four Constable Dep't v. Grabowski*, 922 S.W.2d 954, 956 (Tex. 1996). Olicia similarly was unable to explain any violation of law relating to her concerns about improperly filled out patient MRI-preparation paperwork.

Even accepting Olicia's argument that she believed that the Methodist internal document preparation violations she reported were violations of law when she reported them, she still must show that her belief was reasonable. The record does not provide support for her argument that her belief was reasonable. Olicia argues that "hospitals have both state and federal mandated reporting obligations," pointing to an online presentation by the Texas Department of State Health Services that in turn cites to a federal regulation requiring hospitals to "develop, implement, and maintain an effective, ongoing, hospital-wide, data-driven quality assessment and performance improvement program." 42 C.F.R. § 482.21. The presentation also cites to the Patient Safety and Quality Improvement Act of 2005, which required the federal Agency for Healthcare Research and Quality to develop reporting methods for hospitals to implement such a program. Olicia has not explained how these reporting requirements relate to the Methodist internal policies for MRI patient preparation and documentation at issue here.

6

Other parts of the presentation are similarly unhelpful to Olicia's argument. The presentation highlights requirements in the Texas Health and Safety Code, Chapter 98.102(a)(2), (4), and (5), that healthcare facilities report certain preventable adverse events to the Texas Department of State Health Services. A preventable adverse event is a "healthcare-associated adverse condition or event for which the Medicare program will not provide additional payment to the facility under a policy adopted by the federal Centers for Medicare and Medicaid Services." The presentation explains that "facilities are NOT required to: Report or identify unsafe conditions or near misses—ONLY actual events." Olicia has not alleged that she knew of, much less reported, a preventable adverse event that had occurred and that was not reported. The presentation does not support Olicia's argument that she was reporting a violation of law when she was reporting another MRI technician's failure to follow the Hospital's policies for pre-MRI patient preparation and documentation.

Olicia also points to the Department of State Health Services Hospital Licensing Rules which provide the "minimum standards for hospital functions and services" and which "must be followed where it exceeds other codes and ordinances." 25 Tex. Admin. Code § 133.1. The Rules require that "Policies and procedures shall be adopted, implemented and enforced which will describe the radiology services provided in the hospital and how employee and patient safety will be maintained." 25 Tex. Admin. Code § 133.41. The section provides that radiology services "shall minimize hazards to patients and personnel" and "[p]roper safety precautions shall be maintained against radiation hazards . . . include[ing] adequate radiation shielding, safety procedures and equipment maintenance and testing." 25 Tex. Admin. Code § 133.41.

In *Word v. Wilson N. Jones Regional Health System*, the plaintiff argued that she was fired in retaliation for reporting hospital employees for not interpreting electrocardiograms and

7

echocardiograms in a timely manner. No. 05-06-00881-CV, 2007 WL 2421500, at *4 (Tex. App.—Dallas 2007, no pet.). She argued that the failure to timely read and report the cardiology tests violated the Hospital Licensing Rules. She also argued that the failure violated a rule requiring the governing body of a hospital to "ensure that the medical staff has current bylaws, rules, and regulations which are implemented and enforced." *See* 27 TEX. REG. 3162 (2002) (amended 2007) (current version at 25 Tex. Admin. Code § 133.41(f)(4)(A) (2007)). The court explained that the Hospital Licensing Rules did not provide specific guidance for the timely reading of electrocardiograms or echocardiograms, and that the plaintiff had not provided authority showing that the untimely readings she cited violated of any "bylaws, rules, and regulations." *Word*, No. 05-06-00881-CV, 2007 WL 2421500, at *5. The court went on to state that even if the timeliness of the readings was within the scope of the Licensing Rules, the hospital "had a policy in place and was acting to implement and enforce it." *Id*. "Appellant's report, ordered and sanctioned by her supervisors, was part of the governing body's implementation and enforcement activity." *Id*. The evidence showed the hospital's request for reports about policy violations was part of its efforts to implement the policy, not evidence of a failure to do so. *Id*.

Olicia argues that Methodist violated the Texas Licensing Rules by "fail[ing] to enforce rules for patient safety, including by failing to complete and fraudulently signing the MRI Safety Questionnaire." (Docket Entry No. 44 at 7). But Olicia's belief about Moye's failure to properly complete the paperwork for a patient's MRI does not show that Olicia believed that the Hospital had failed to implement a safety policy and therefore violated the Texas Licensing Rules. The record shows that after Olicia complained of the lead MRI Lead Technologist's failure to follow Methodist's MRI patient preparation steps, Methodist fired that employee. (Docket Entry No. 23-15 at 24). This record evidence also undermines Olicia's argument that she was fired for reporting

8

another employee's failure to follow the required steps. The record evidence shows that Methodist took steps to enforce its MRI patient preparation procedures, including by firing employees who were reported for failing to follow them. (Docket Entry No. 23-15 at 24).

In *Word*, the plaintiff's internal report of a violation of a hospital rule relating to patient care showed that the hospital had safety rules in place. Although Olicia's specific reports about another MRI technician's missteps were not requested by the hospital, as were the plaintiff's reports in *Word*, by her own allegations, Methodist enforced its MRI patient preparation rules when it received and verified reports that the lead MRI technologist had violated them. (Docket Entry No. 23-15 at 24). Olicia complains that she did not receive a follow-up from her supervisor about her reports about Moye, but this alone does not show that there were no safety policies in place. Olicia has not pointed to evidence that she reported that Methodist systematically failed to follow or enforce its rules relating to MRI patient preparation, as opposed to the specific failures by other MRI technicians to follow those rules. And Olicia cannot raise a belief that there was a law violation for the first time in a motion for reconsideration, when she testified that she had no such belief when she reported her coworker for not following Methodist's internal MRI patient preparation steps.

Finally, Olicia points to Rhonda Smith's deposition in another proceeding in state court as new evidence that Olicia's termination was pretextual. (Docket Entry No. 44 at 9). Rhonda Smith was Olicia's manager at the time of Olicia's alleged reports of law violations. Olicia alleges that Smith was responsible in part for Olicia's retaliatory discharge. Olicia argues that Smith's new deposition shows that Smith is not credible because Smith testified that she never received any complaints from Olicia regarding safety violations, that she has never been accused of violating safety protocols, and that she did not report other employees for violating internal policies.

9

(Docket Entry No. 44 at 9–11). This contradicts Olicia's testimony that Olicia reported safety violations to Smith and reported Smith for violating safety practices. (Docket Entry No. 23-15 at 10–12, 27). Olicia also argues that this shows that Smith singled Olicia out for her violation of internal policy. (Docket Entry No. 44 at 11).

In deciding whether to consider evidence presented for the first time in a motion for reconsideration, courts consider: "(1) the probative value of the evidence; (2) the reason for Plaintiffs' default; (3) whether the evidence was available to Plaintiffs at the time of the summary judgment motion; and (4) potential prejudice to [the defendant]." *In re Louisiana Crawfish Producers*, 852 F.3d 456, 466 (5th Cir. 2017). A motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019). Olicia has not shown that Smith's testimony was previously unavailable. Olicia's argument seems to be that the testimony shows that Smith inconsistently reported other employees for violating hospital policies. Olicia relies on Smith's deposition testimony to discredit the hospital's arguments in this case, and therefore show that the hospital's reason for firing her was pretextual. But Smith's testimony at most shows that Smith did not believe that Olicia was reporting violations of law, and the court has already concluded that Olicia's own testimony does not show that she believed she was reporting violations of law. Olicia has not shown how that Smith's testimony was unavailable or that it would have altered the summary judgment analysis or result.

### III. Conclusion

Olicia's motion to reconsider the order granting summary judgment, (Docket Entry No. 44), is denied.

SIGNED on July 6, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge